Argued and submitted January 12, 1995, judgment of conviction and sentence of death affirmed March 21, 1996

# STATE OF OREGON,
*Respondent,*

*v.*

# DOUGLAS FRANKLIN WRIGHT,
*Appellant.*

## (CC CR92-073; SC S40690)

913 P2d 321

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kristin N. Preston, Assistant Attorney General.

Before Carson, Chief Justice, Gillette, Fadeley, Unis, Graber, and Durham, Justices, and Deits, Justice pro tempore.*

* Van Hoomissen, Justice, did not participate in this opinion.

GILLETTE, J.

Fadeley, J., concurred in part, specially concurred in part, and dissented in part and filed an opinion.

## GILLETTE, J.

This criminal case is before us on automatic and direct review from convictions for aggravated murder and a sentence of death. ORS 163.150(1)(g). Following a jury trial, the trial court entered a judgment finding defendant guilty of eight counts of aggravated murder, one count of kidnapping in the first degree, and one count of attempted aggravated murder, and imposed a sentence of death. We affirm.

The facts of the murders play little part in the issues presented by this appeal; a brief summary of them is sufficient. Defendant was convicted of killing four men, in separate incidents, but apparently in accordance with a common plan, during October 1991. Defendant would recruit "street people" from Portland as laborers for the alleged purpose of building a camp for young people in the Cascades near Mount Hood. Defendant would hire the men in downtown Portland, feed them, transport them to an area on the Warm Springs Indian Reservation in Wasco County, and then murder them by shooting them in the head with a powerful handgun. Police uncovered defendant's scheme when one of his intended victims escaped alive from the area where the others were killed. That victim later was able to identify defendant, his pickup truck, and the place where he lived; a pistol recovered from defendant's pickup proved to be the murder weapon.

■ Defendant first argues that the trial court erred in denying his motion to exclude evidence of his convictions, in 1970, of two murders not connected factually to the present offenses. We disagree. The murders were relevant to the present case, because the charge of aggravated murder was based on the fact, *inter alia*, that defendant previously had been convicted of murder. ORS 163.095(1)(c).[1]

---

[1] ORS 163.095(1)(c) provides:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"(1) * * *

"(c) The defendant committed murder after having been convicted previously in any jurisdiction of any homicide, the elements of which constitute the crime of murder as defined in ORS 163.115 or manslaughter in the first degree as defined in ORS 163.118."

Defendant acknowledges that the earlier convictions were, on their face, relevant. He argues, however, that they should have been excluded from consideration by the trier of fact in the present case, because (1) he was denied constitutionally adequate counsel in connection with the 1970 murders, (2) his guilty pleas to the 1970 murders were not knowing and voluntary, and (3) he was denied counsel in his effort to obtain a post-trial remedy from the 1970 murder convictions.

The trial court reviewed all the evidence that defendant submitted in support of his claims and made extensive findings of fact with respect to them, but ultimately concluded that defendant had failed to prove any of them by a preponderance of the evidence. In doing so, the trial court declined to give any weight to a file of the Oregon State Bar that had been amassed concerning defendant's court-appointed counsel for the 1970 murders, holding that the file did not "bear directly on the matter at hand."[2]

The state first responds by arguing that defendant is not entitled to attack his former convictions collaterally under the pertinent circumstances. We do not address that contention because, even if defendant were entitled to have his theories addressed on the merits, they do not help him. The trial court's rulings on this subject are supported by the court's findings of fact concerning the factual and procedural circumstances relating to each of defendant's theories, and those findings are supported in turn by evidence in the record. *See, e.g., State v. McDonnell*, 313 Or 478, 485, 837 P2d 941 (1992) (court bound by trial court's findings of historical fact, where those facts supported by evidence in the record). A further discussion of this assignment, which boils down to a failed attempt, long after the fact, to justify post-conviction relief, would not benefit bench or bar. This assignment of error is not well taken.

---

Other counts of the indictment in the present case were based on the fact that there was more than one victim in the same criminal episode. ORS 163.095(1)(d).

[2] Defendant's 1970 counsel was disbarred in 1979 for failure to file federal income tax returns. He since has died. The Bar's file contained a number of complaints about deceased counsel, but none from defendant and none that could be said to relate to counsel's alleged inadequacies in defendant's 1970 case.

12

■ Defendant next assigns error to the trial court's admission, during the guilt phase, of evidence of a statement that defendant made to a friend while defendant was in jail and awaiting trial on the present charges. The statement occurred when the friend remarked to defendant that everything seemed to be going "okay." Defendant replied that that was true, "except for the guns." Defendant argued at trial that the statement was not an admission and was not relevant.

This is not an issue that requires an extensive review of the law of evidence. The statement was a garden variety statement by a party, offered against the party. *See* OEC 801(4)(b)(A) (statement not hearsay if offered against a party and was the party's own statement). The statement was relevant to defendant's possession of the murder weapon. This assignment of error is not well taken.

■ Defendant next assigns error to the trial court's failure to grant a mistrial after the father of one of the victims "glared" at defendant while returning from the witness chair to his seat. The trial judge, who saw the incident, stated:

"Well, at this time I'm going to deny the motion. I did observe Mr. Barker to stare at the defendant. In my observation of it, it wasn't of sufficient magnitude to cause a mistrial or incite the jury in this case."

This case presents a classic example of why this court defers to a trial court's assessment of the need for a mistrial in most circumstances: The trial judge is in the best position to assess the impact of the complained-of incident and to select the means (if any) necessary to correct any problem resulting from it. *See, e.g., State v. Rogers,* 313 Or 356, 382, 836 P2d 1308 (1992) (illustrating proposition), *cert den Rogers v. Oregon,* 507 US 974, 113 S Ct 1420, 122 L Ed 2d 789 (1993). We defer to the trial judge's exercise of discretion here. This assignment of error is not well taken.

The foregoing assignments of error are the only ones dealing with issues that arose during the guilt phase of defendant's trial. As noted, we find none of the assignments to be well taken. It follows that all defendant's conviction, for aggravated murder, kidnapping, and attempted aggravated

murder, are affirmed. We turn now to assignments of error relating to the penalty phase of the trial.

In his fourth assignment of error, defendant argues that the trial court erred, during the penalty phase of the case, in refusing to allow him to call witnesses for the purpose of asking those witnesses "whether they believed that [defendant] should receive a death sentence."

After the state had rested its case in the penalty phase of the trial, the state moved for an order excluding from the jury's consideration any lay opinion evidence on the ultimate issue in the case, *viz.*, whether defendant should receive the death penalty. Defense counsel asserted that his client had the right to offer such evidence:

> "Well, Your Honor, I think it's entirely appropriate for a witness who is familiar with the defendant to express his opinion about what a proper penalty would be. And I would want to ask that question to each of these witnesses. I would want to ask the question, 'Do you believe Doug Wright should receive the death penalty?' * * *
>
> "* * * * *
>
> "* * * We can bring in people that know the defendant, not just people who are, you know, dyed in the wool opponents of the death penalty, who have been associated with him, know him, care for him, love him; that's mitigation. He's impressed them enough in all walks of his background and life, he impressed these people enough to where even though they know the horribleness of the situation, care for him enough to make a plea for him, and I think that's mitigation."

After taking the matter under advisement, the trial court ruled that the proffered evidence was not admissible. Defendant assigns error to that ruling.

■ The state first argues that there has been no satisfactory offer of proof with respect to the proffered testimony. Normally, when the exclusion of evidence is assigned as error, an offer of proof is required. This court has explained that rule in the following way:

> "The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was

erroneous and, if so, harmful, *i.e.*, whether the error affected a substantial right of the appellant. Other purposes are to permit the trial judge to reconsider his or her ruling in view of the actual evidence to be offered and to enable opposing counsel to take appropriate action."

*State v. Smith*, 319 Or 37, 43-44, 872 P2d 966 (1994) (citations omitted); *see also State v. Busby*, 315 Or 292, 298, 844 P2d 897 (1993) ("[u]nder OEC 103(1)(b), when a trial court excludes testimony or other evidence, an offer of proof by the proponent of the evidence is required to preserve any claim of error related to what the evidence would have shown"); *State v. Olmstead*, 310 Or 455, 459-60, 800 P2d 277 (1990) (offer of proof required when evidence excluded on relevance grounds); *State v. Affeld*, 307 Or 125, 129, 764 P2d 220 (1988) ("an offer of proof is not required * * * [when it] is impossible because of a trial court's refusal to allow the offer of proof to be made").

■       It is not a violation of the familiar requirement of an offer of proof to hold that, in the present case, defendant sufficiently disclosed the evidence that he intended to offer to make it possible for the trial judge to know the nature of that evidence and for a court on review to be able to determine whether the judge's ruling was a permissible one. True, defendant's proffer was a limited one — it consisted only of an offer to produce witnesses who personally were acquainted with the accused and who would testify, in response to a question whether they believed that defendant should receive the death penalty, that he should not. But that offer, as far as it goes, at least raises a valid question with respect to the admissibility of that specific evidence.

        The state argues that the offer by counsel was insufficient, because it did not include a showing as to who the witnesses were, what their relationship with defendant was or, indeed, whether the witnesses even knew defendant. We disagree. As our brief summary indicates, we think that an ungrudging reading of the foregoing colloquy shows that defendant was intending to offer evidence from people who knew him, knew about his crimes, and still believed that he should be allowed to live. We hold that defendant made a sufficient offer of proof to preserve the narrow question of the

admissibility of evidence as to what each witness believed that defendant's sentence should be. We turn next to determine whether the proffered evidence was relevant.

The trial judge excluded defendant's offer in this case, because he believed that the evidence would not have been relevant.[3] For the reasons that follow, we agree.

We begin by noting the extraordinarily narrow nature of the court's ruling: Defendant was permitted to ask his witnesses anything that related to his character or background or to any circumstance of the offense. What was excluded was a witness' opinion, standing alone, that defendant should not receive a death sentence.

ORS 163.150(1)(a) provides that, in a capital penalty-phase proceeding, "evidence may be presented as to any matter that the court deems relevant to sentence." This court has held that "[t]he standard of relevance set forth in OEC 401 applies in penalty-phase proceedings." *State v. Stevens*, 319 Or 573, 580, 879 P2d 162 (1994).[4]

To be relevant during a penalty-phase proceeding, evidence must relate to one or more of the four statutory questions that the trier of fact addresses in such proceedings. Those questions are set out in ORS 163.150(1)(b):

"Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

---

[3] The trial judge stated:

"Well I thought about it last night, read the cases that were cited by the state. And I've come to the conclusion that under the evidence code, opinion evidence addressing the ultimate issue is not prohibited, but it has to be relevant, and I'm not really — it's my opinion, and I'm not going to second-guess myself, it's my opinion that addressing the ultimate issue does not add any additional relevance to the jury, and I'm not going to let it come in in the defendant's case, *they can skirt all around the issue in terms of their understanding of the defendant's background,* but to address the ultimate issue does not add any additional relevancy to the case and I'm not going to allow it to come in. That's my ruling."

(Emphasis added.)

[4] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"(A)   Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B)   Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C)   If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D)   Whether the defendant should receive a death sentence."

Plainly, the only one of the four questions to which the evidence proffered in this case possibly could relate is the fourth one. With respect to that question, *viz.*, whether defendant should receive the death penalty, ORS 163.150(1)(c)(B) further provides:

"In determining the issue in paragraph (b)(D) of this subsection, the court shall instruct the jury to answer the question 'no' if one or more of the jurors find there is any aspect of the defendant's character or background, or any circumstance of the offense, that one or more of the jurors believe would justify a sentence less than death."

The testimony offered by defendant in this case cannot be said to relate to the circumstances of the offense. Thus, in order to be relevant, the evidence must be relevant to "any aspect of the defendant's character or background * * * that one or more * * * jurors believe would justify a sentence less than death." *See State v. Guzek*, 322 Or 245, 254, 906 P2d 272 (1995) (holding that focus of ORS 163.150(1)(b)(D) is on mitigating evidence); *see also Stevens*, 319 Or at 579 (holding that relevance of evidence with respect to the so-called "fourth question" under ORS 163.150(1)(b)(D) to be determined under criteria established by ORS 163.150(1)(c)(B)).

■    Given the limited nature of defendant's offer of proof in this case, we cannot say that the proffered opinion evidence, by itself, was even minimally related to defendant's character or background. We have assumed, from counsel's

description of the evidence, that it would be offered by persons who knew defendant. But, given that sparse information, and given the fact that the only question that defendant sought to ask of witnesses that the trial judge excluded was, "Do you think that defendant should be given the death penalty?," we cannot identify a rational connection between an answer to that question and the criteria of the statute. The only answer that would help defendant would be, "No, I don't think that defendant should be given the death penalty." But, without more, such an opinion relates only to the witness' preference, not to the character or background of the defendant. The offer failed to connect the proffered evidence with an issue that the jury was deciding. *Compare Stevens*, 319 Or at 584-85 (testimony of former wife of the defendant that the defendant's death would have various negative effects on their daughter held to permit "an inference that the defendant's execution would affect his daughter negatively because of some mitigating aspect of defendant's character or background").

Testimony in the form of an opinion is not inadmissible on the sole ground that the opinion embraces an ultimate issue to be decided by the trier of fact. OEC 704. But, when opinion evidence is offered from a lay witness, that evidence must be "helpful" to the trier of fact. OEC 701(2). The concept of "helpfulness" in OEC 701 subsumes a relevancy analysis. John William Strong, *Language and Logic in Expert Testimony: Limiting Expert Testimony by Restrictions of Function, Reliability, and Form*, 71 Or L Rev 349, 361 n 48 (1992) (citing 3 Jack B. Weinstein & Margaret A. Burger, *Weinstein's Evidence*, ¶ 702[02], at 702-18). The proffered witness' preference as to defendant's sentence would not be helpful to the trier of fact. As this court recently has explained, " '[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.' " *Guzek*, 322 Or at 251 (quoting OEC 401 Commentary, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* at 104 (2d ed 1989)). *See State v. Tucker*, 315 Or 321, 340-41, 845 P2d 904 (1993) (Unis, J., concurring) (correctly explaining, *inter alia*, "helpfulness" requirement of OEC 701(2), in course

of explaining standards for admissibility of lay opinion testimony); *see also State v. O'Key*, 321 Or 285, 298-99, 899 P2d 663 (1995) (analyzing similar principle involving expert testimony under OEC 702). The proffered testimony in this case was not helpful, as that concept is embedded in OEC 701. The trial court did not err in excluding the evidence under the statute.

Neither did the trial court err under the constitutions, state or federal. Defendant argues that exclusion of his proffered evidence denied him the right to present a defense under Article I, section 11, of the Oregon Constitution, as well as denying him due process under the Eighth and Fourteenth Amendments to the United States Constitution. Defendant has not cited any case, however, and we know of none, that constitutionally requires that a defendant be allowed to place irrelevant evidence before the trier of fact. Because, as we already have held, the proffered evidence was not relevant, that ends the matter. *See, e.g., Stevens*, 319 Or at 582-83 (evidence must have some relevance to statutory questions before its admission is required by statute); *Payne v. Tennessee*, 501 US 808, 822, 111 S Ct 2597, 115 L Ed 2d 720 (1991) (Eighth Amendment requires admission only of " 'relevant mitigating evidence' " (quoting *Eddings v. Oklahoma*, 455 US 104, 114, 102 S Ct 869, 71 L Ed 2d 1 (1982))).

We hold that, under the very narrow offer of proof made by defendant and the very narrowly limited ruling that the court made in response to that offer, the evidence that defendant wished to offer was properly excluded. The trial court's ruling was not error. This assignment of error is not well taken.

■ Defendant next assigns error to the trial court's refusal, during the penalty phase of the trial, to grant a mistrial. During cross examination of defense psychologist Paul Metzger, the prosecutor asked Metzger if it were correct that he was then facing revocation of his license to practice psychology, because he had engaged in sexual contact with his patients. Metzger replied, "There is a—there was an allegation, and that has not been resolved." Defense counsel then objected, the jury was sent out, and defense counsel moved

for a mistrial. The trial court denied the motion. Defendant then asked the court to give a cautionary instruction, which it did.[5] Defendant does not criticize that instruction, or argue that, assuming that the giving of an instruction as opposed to granting a mistrial was a permissible discretionary choice, the instruction was insufficient to cure the problem. *See, e.g., State v. Smith*, 310 Or 1, 25-26, 791 P2d 836 (1990) (curative instruction normally is sufficient, "absent an overwhelming probability" that jury would be unable to follow the instruction).

As we already have explained, motions for mistrial are directed to the discretion of the trial court. This is, again, a situation in which the trial court's choice not to declare a mistrial but, instead, to give a cautionary instruction, falls within the permissible range of choices committed to the court's discretion under such circumstances. The trial court did not abuse its discretion in this case. *See Rogers*, 313 Or at 382 (explaining concept). This assignment of error is not well taken.

■ In his sixth assignment of error, defendant asserts that the trial court erred in denying defendant's post-trial motion to contact jurors. The essence of the motion was that, immediately after the verdict was returned against defendant, there was a chance encounter between one of the jurors and one of defendant's counsel. During that encounter, the juror indicated to counsel that the juror had discussed with a person named "Kathy" the possibility of witnesses from the penitentiary being called to testify. The juror also told counsel that she was glad that it had not been necessary to call such witnesses and that the juror had been scared by that prospect.

The bailiff in charge of the jury in this case was named Kathy. The prosecutor filed an affidavit in which he informed the court that Kathy in fact recalled having a brief

---

[5] The court told the jury:

"Right before I asked you to step out for [a] moment[ ], there was a question asked by the state of this witness. And there may or may not have been a response. But you are instructed to disregard the question — the last question asked by the state of this witness just prior to the recess and to disregard any response thereto if, in fact, there was any response made."

conversation with the juror, in which the juror questioned whether prisoners from the penitentiary would be called to testify, and the bailiff stated that she did not know. Based on the foregoing information, the trial court concluded that defendant had not made a sufficient showing to justify interviewing any juror. We agree.

Defendant recognizes that his request was directed to the exercise of the trial court's discretion and that he must, therefore, demonstrate an abuse of discretion in this case. *See McElwain v. Kabatoff*, 275 Or 393, 395, 551 P2d 105 (1976) (court has inherent power to protect public interest in finality of adjudicative process by preventing post-trial interview of jurors); *Niemela v. Collings*, 267 Or 369, 372, 517 P2d 268 (1973) (expressing strong "antagonism" to "indiscriminate practice of interrogating jurors after the verdict"; citing with approval rule designed to limit such activity significantly). The present record falls short of demonstrating an abuse of discretion. The most that the trial court faced was an allegation, filed two months after the conclusion of the trial, that a juror had been worried about a possible development in the trial, had spoken to the bailiff about her concern, and had received no information concerning it. Under such circumstances, there was no justification for the court to inquire further. *Compare Niemela*, 267 Or 370-71 (affidavit of the losing plaintiff's father to effect that a juror "raised his head and made a very distinct communication in the direction of the defendant" on way to jury room insufficient to show misconduct).[6] This assignment of error is not well taken.

---

[6] The result is the same under Uniform Trial Court Rule (UTCR) 3.120. That rule provides, in part:

"(1) Except as necessary during trial, and except as provided in subsection (2), parties, witnesses or court employees must not initiate contact with any juror concerning any case which that juror was sworn to try.

"(2) After a sufficient showing to the court and on order of the court, a party may have contact with a juror in the presence of the court and opposing parties when:

"* * * * *

"(b) there is a reasonable ground to believe that a juror of the jury has been guilty of fraud or misconduct sufficient to justify setting aside or modifying the verdict or judgment."

Defendant's showing was not "sufficient," as contemplated by the rule. The completed record made before the judge in the matter left no reasonable basis for the judge to conclude that there was any reason for inquiring further.

Finally, in his seventh assignment of error, defendant mounts various challenges to the aggravated murder statutes themselves. He acknowledges, however, that each of those challenges previously has been ruled on by this court in a manner contrary to his assertions. That acknowledgment is correct. We will not repeat the analyses in earlier cases from this court that addressed those contentions. This final assignment of error is not well taken.

For the foregoing reasons, the judgment of conviction and sentence of death are affirmed.

**FADELEY, J.,** concurring in part, specially concurring in part, and dissenting in part.

## I

I dissent because defendant did not receive a lawful jury trial during the penalty phase. The jury's consideration of the life or death question was intentionally tainted by improper and prejudicial conduct of the prosecutor.

Under ORS 163.150(1)(b)(D), the fourth question asks the jury if there is any reason why a defendant convicted of aggravated murder should not be put to death. The instruction interpreting that question to the jury is phrased in terms of the jurors forming a positive belief about the crime or the defendant that would justify a sentence less than death.[1] ORS 163.150 (1)(c)(B) mandates that the instruction must be given. In my view, the phrasing of the question, as stated in those instructions, operates as a presumption favoring death and *requires* that the jury must affirmatively find a reason to avoid that presumption. I do not think that such a presumption, in the area of a defendant's background or character, complies with the mandate of the Supreme Court of the United States in *Penry v. Lynaugh,* 492 US 302, 109 S

---

[1] The fourth question is, by implication, to be answered "yes," *i.e.,* for a death sentence, unless jurors make a finding and on that basis form a belief. If no finding is made or no belief is formed thereon, the instruction calls for the death answer. The mandatory instruction statute provides:

"In determining the [life or death] issue inparagraph (b)(D) of this subsection, the court shall instruct the jury to answer the question 'no' if one or more of the jurors find there is any aspect of the defendant's character or background, or any circumstance of the offense, that one or more of the jurors believe would justify a sentence less than death." ORS 163.150(1)(c)(B).

Ct 2934, 106 L Ed 2d 256 (1989), and *Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989).[2]

However, this case goes beyond the issue of the propriety of a presumption favoring death. Other error, in relation to the fourth question, prevented the defendant from defending his life effectively before the jury.

Expert psychological evidence that defendant was a brain damaged person, offered in mitigation, was savaged by intentional, prejudicial statements made by the prosecutor about the expert's personal character during cross examination. The trial court did not take the positive action necessary to assure that the prejudice did not infect the life or death question. Although a "cautionary" instruction was given, it was misdirected to other matters than the state's attack on the experts character and, in any event, was not adequate to erase the prejudice intentionally created by the state.

The factual context, to which the psychological testimony about brain damage referred, must be briefly recounted. Defendant picked up homeless people from the streets of Portland and took them to central Oregon rural areas where he shot them. This cruel, wanton, and senseless act is beyond the ken of normal people. Why would anyone do it? No motives, such as robbery, perverted cruelty, or sexual exploitation, appear in the record to explain these cruel murders. The jury was left to speculate about what facets of defendant's background and character produced those wanton homicides.

Two mental health professionals tested defendant and found that he did not have a normally functioning brain and that, in the words of one of them, there was "clear evidence of organic impairment of the right frontal area" of his brain.[3] The psychologist just quoted based his opinion and

---

[2] The Oregon law makes the jury the sole and final arbiter of whether the penalty is death, but apparently limits their opportunity to choose less than death to their finding of mitigation. Unlike the law in many states, the jury's separate penalty phase verdict is not a sentencing recommendation to the judge; nor is it, as in many other states, a presumptive sentence that the judge may for stated reasons override or modify. It does not say that the jury must make the decision in ignorance of a defendant's mitigation claims, however.

[3] Oregon's mental disease or defect statute *excludes* brain damage of that sort from the definition of disease or defect, where mental health experts may classify the brain impairment solely as a personality disorder. ORS 161.295(2).

testimony on scientific tests he administered to defendant after his arrest in this case.

During the state's cross examination of that witness, the prosecutor attacked the psychologist's character and moral credibility. The attack was based on the wording of a notice of hearing to be held in the future by the Board of Psychologist Examiners. The following occurred on the prosecutor's cross examination of the defense psychologist:

"Q   [By Prosecutor, Mr. Smith] And you indicate you're closing down your practice in Oregon?

"A   Yes.

"Q   Where are you moving to?

"A   I'm living in Oregon, but I'm just retiring.

"Q   Oh, okay. And is it correct that basically your license has been revoked by the board of —

"A   No, it is not correct.

"Q   Aren't you subject, at this point in time, to a revocation of your license based upon sexual contact that you had with your patients? Is that not correct, Dr. Metzger?

"A   There is a — there was an allegation, and that has not been resolved.

"Q   Well, in fact —

"MR. WISEMAN:   Your Honor, I think that this is inappropriate, an attack of this —

"MR. SMITH:   This man has gave his credentials, Your Honor —

"MR. WISEMAN:   I'm going to object to this as —

"THE COURT:   Just a moment, just a moment. I'm going to ask the jury to step out for just a moment, please.

[JURY LEAVES]

"MR. WISEMAN:   Your Honor, I'm going to move for a mistrial at this time. That's wholly inappropriate, totally unprofessional on the part of Mr. Smith to being [sic] something like that up. That's outrageous. That's the most outrageous conduct I think I've seen in 25 years.

"* * * [After stating that the matter contained in the prosecutor's questions had been denied admission as evidence either two or three times previously, the court denied defendant's motion for mistrial.]"

The trial judge gave the following cautionary instruction when the jury returned to the courtroom.

"THE COURT: "Right before I asked you to step out for moments [sic], there was a question asked by the state of this witness. And there may or may not have been a response. But you are instructed to disregard the question the *last* question asked by the state of this witness just prior to the recess *and to disregard any response* thereto *if, in fact, there was any response made.*" (Emphasis added.)

The implication of these several questions required a very clear and complete cautionary instruction as part of any attempt to cure what otherwise would be a relatively clear case requiring mistrial as to the penalty phase, in my opinion. The instruction given was not clear or complete and did not cure the trial error created by the prosecutor's attack.

It is clear from the protracted argument in the record that the effort to blacken the expert's character by charges of unrelated misconduct was an intentional strategy employed by the prosecutor as an officer of the state. Intentional prosecutorial misconduct is a proper basis to grant mistrial. *State v. White*, 303 Or 333, 736 P2d 552 (1987). That case involved prosecutorial misconduct in the context of drawing attention to a defendant's exercise of the right to remain silent. *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983) also supports mistrial here. That case discusses intentional provocation of mistrials at 274-76. In *State v. Jones*, 279 Or 55, 566 P2d 867 (1977), it was held to be intentional prosecutorial misconduct to imply defendant had previously committed rape and that a mistrial was required notwithstanding a cautionary instruction. *Id.* at 62-63. Furthermore, OEC 103(3) provides:

"In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

The admonition of that statute, designed to prevent prejudice created by inadmissible statements, was not honored by the state in this case.

The prosecution's misconduct was not cured by the confusing and expressly limited "cautionary" instruction. The court only asked the jury to forget what they had heard as to the "last question," and implied that, as to the single, last question to which the court's cautionary instructions were alone directed, there may not have been any response. In the last question, the prosecutor made no statement degrading the defense witness. The cautionary instruction failed to cover the next to last and second to last prior questions to which responses indeed had been given and which contained the prosecutor's accusatory statements. A juror, listening carefully to the judge's instruction and taking it literally, would not have disregarded the knowledge that defendant's psychologist was under attack as to his professional license to practice and that the attack was based on sexual contact with more than one of his patients. In *Shepard v. United States*, 290 US 96, 54 S Ct 22, 78 L Ed 196 (1933), the Supreme Court of the United States rejected arguments that the jury would not be misled by an improper prosecutorial accusation during trial. The court stated:

"The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed." 290 US at 104.

Although *Shepard* involved error in admitting evidence of an accusation in the form of hearsay, the concept applies to the highly charged accusations injected into this case by the state. Given that intentional prosecutorial misconduct injected the prejudice, it was error to deny the mistrial. The ineffective "curative" instruction compounded the error by leaving the accusatory statements uncorrected.

As we shall shortly see, the brain damage evidence savaged by the officer of the state was the only substantial evidence in mitigation made available to the jury. In carrying out its duty to reach a reasoned moral response to the defendant and the crimes, the jury is required to consider evidence in mitigation under the fourth question. Given that the

expert's evidence about brain damage was the only signifi-
cant mitigation evidence to reach the jury, the unsubstan-
tiated attack on the witness as a bad person prejudiced the
jury in their consideration of mitigation. The trial court's
ineffective instruction and the majority's attitude that leaves
mistrial questions up to the trial judge combine with the sta-
te's effort to prejudice the jury about the mitigation witness
in this case. Defendant did not have a fair trial as to the
fourth question and mitigating brain damage. That error and
the gravity of its consequence require a new penalty phase
hearing.

## II

Defendant claims that he was prevented from mak-
ing a full defense to the state's demand that his sentence be
death because of exclusion of lay opinion evidence offered by
defendant under the fourth question.

A trial court ruling completely excluded the lay opin-
ion evidence of defendant's acquaintances offered in mitiga-
tion. The trial court ruled that the offered testimony was not
"relevant" to the answer to the question whether there is any-
thing about defendant's background that would "justify" a
sentence less than death. The opinion was offered in the
same words as are used by the statutory fourth question, that
is: "Whether the defendant should receive a death sentence."[4]
I specially concur in the result the majority achieves, for the
reasons stated.

The only basis given by the trial court for the exclu-
sionary ruling was a general lack of relevance. I disagree
with that generality. What acquaintances think of a person is
inherently part of that person's background in society. How-
ever, I would affirm the trial ruling on a different basis. OEC
701 (opinion testimony by lay witnesses) provides:

"If the witness is not testifying as an expert, testimony
of the witness in the form of opinions or inferences is lim-
ited to those opinions or inferences which are:

---

[4] OEC 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not
objectionable because it embraces an ultimate issue to be decided by the trier
of fact."

"(1) Rationally based on the perception of the witness; and

"(2) Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

An opinion thus is relevant and admissible if the opinion or inference would help in the determination of a fact in issue, namely, in this case, whether death is the appropriate penalty for this particular individual convicted of aggravated murder.

The lay opinion rule requires, however, that the opinion have a rational basis coming from the perception of the opining witness, and also that it be helpful to a determination of a fact or an understanding of the testimony of the witness. The offer in this case indicated that the persons knew defendant and thus gave a basis for the witness' perception. To the question whether that basis was rationally connected to the described testimony, I would grant that it is.

OEC 401 defines relevancy as: "any tendency to make the existence of any fact * * * more probable or less probable than it would be without the evidence." Whether acquaintances of a specific person have the opinion that the person should not die has at least *some* tendency to prove that a sentence less than death is justified.

Whether there is "any aspect of the defendant's character or *background* that * * * would justify a sentence less than death," as the mandatory instruction interpreting the fourth question asks, is certainly a matter "properly provable in the case," as *State v. Guzek*, 322 Or 245, 251, 906 P2d 272 (1995) puts it. In *State v. Tucker*, 315 Or 321, 341, 845 P2d 904 (1993) (Unis J., concurring) the resident evidence expert on this court laid out why a lay opinion should have been admitted in the guilt phase of a death penalty case. That essay on the subject is commended to the reader. Under its tenets, the judge in the present case would not have erred if the judge had admitted the opinion, subject to the opinion being connected later to observed and articulated aspects of defendant's background. However, the offer of proof on the record here lacks that connection to any articulable reasons why the witness' opinion that death is not appropriate may

be a reasoned moral response to an item or items in defendant's background known to the witness. Because the offer was deficient, however, the trial court did not err in denying admission of the bare lay opinion of acquaintances that was offered. In *Tucker* the cell mate of defendant testified that defendant stated he shot the victim at close range and that:

> "He seemed real proud of the fact that he did that." *Id.* at 339.

Justice Unis wrote in *Tucker* that this lay opinion was a shorthand description of what the witness concluded from observations of defendant, and "added something helpful" for the jury. Unis stated:

> "Tsow's characterization satisfied OEC 701's standards of admissibility. Tsow had personal knowledge of the facts from which his characterization of defendant's attitude was derived, the characterization is one that a normal person could form on the basis of the perceived facts, and the characterization is helpful to a clear understanding of Tsow's testimony, as well as to the determination of a fact in issue in this case. The characterization provided the jury with information that it would not otherwise have had and was useful to the jury in performing its factfinding function. Defendant was charged with personally and intentionally killing two people. Tsow's 'shorthand' description that defendant 'seemed real proud of the fact that he [shot the victims point blank]' provided the jury with evidence from which it could infer that defendant acted with the requisite mental state (intent) and that the shootings were not attributable to accident, mistake, or negligence. *See State v. Wright,* 315 Or 124, 132, 843 P2d 436 (1992) ('[p]eople often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact') (quoting *State v. Lichty,* 313 Or 579, 585, 835 P2d 904 (1992)); *State v. Lerch,* [296 Or 377, 383, 677 P2d 678 (1984)] (referring to legislative commentary approving proposition in prior case that 'a lay witness may testify as to what he has perceived by using a 'shorthand' description'). Thus, Tsow's characterization added something helpful to the description of defendant's statements about the shootings." (Footnote omitted.) *Id.* at 341.

In this case, the opinion testimony offered by the defendant was clearly of a mitigating nature. Had the offer of

proof been more extensive, the evidence might very well have been demonstrated to be related to defendant's background and therefore helpful and relevant. In determining whether an evidentiary ruling is error, OEC 103(1)(b) provides:

> "In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Defendant did not make an offer that included evidence specifically intended to satisfy conditions of admissibility for a lay opinion.

Defendant's offer in this case does not include an offer that the witness or logic connects the opinion to a fact in issue as should be the case in order to determine whether the opinion helps to determine a fact in issue. The bare opinion is not yet demonstrated to be admissible; it was not error to exclude it.[5] I specially concur in affirming that ruling.

## III

I dissent from the affirmance without discussion of that part of defendant's constitutional challenges to Oregon's death penalty statutes that relate to the fourth question put to the sentencing jury, including the lack of proportionality or excessiveness review of the answer given to that question. *State v. Cunningham*, 320 Or 47, 75, 880 P2d 431 (1994); *Excessive Review for Capital Defendants After Honda Motor Co. v. Oberg*, 108 Harv. L Rev 1305 (April 1995).

## IV

I would affirm the conviction and specially concur in the holding that excluding the lay opinion was not error in view of the defective offer of proof. I would, however, reverse the penalty phase decision on the mistrial issue and remand for a new sentencing, or a new penalty phase trial.

---

[5] However, the court would not have erred to admit it conditionally under OEC 104(2), "subject to * * * evidence sufficient to support a finding of the fulfillment of the condition" being introduced subsequently.