Argued January 23, affirmed February 19, reconsideration denied
March 27, petition for review denied April 9, 1974

STATE OF OREGON, *Respondent*, *v.* MARTIN
JOHN BAUER (No. 73-0802), *Appellant.*

519 P2d 96

*Larry R. Roloff,* Eugene, argued the cause for appellant. With him on the brief was Kenneth A. Morrow, Eugene.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Defendant was convicted by a jury of criminal activity in drugs, ORS 167.207, and appeals from the resulting judgment.

His first assignment of error challenges the sufficiency of the affidavit as a result of which a search warrant was issued, resulting in the seizure of substantial quantities of drugs. The trial court held the affidavit to be sufficient and refused to grant his motion to suppress.

In *State v. Metler,* 6 Or App 356, 360-61, 487 P2d 1377 (1971), we said:

> "The basic principles of law are axiomatic. A search warrant cannot issue except upon probable cause. *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *State v. Leo,* 4 Or App 543, 480 P2d 456 (1971); *Wright v. Cupp,* 3 Or App 586, 475 P2d 979 (1970); ORS 141.030. Probable cause must be shown from the facts or 'four corners' of the affidavits. *Aguilar v. Texas,* supra. * * *"

Measured by that standard we agree with the trial judge that the affidavit[1] met the requirements of probable cause.

---

[1] The affidavit for the search warrant, as set forth in appellant's abstract of record and brief, is as follows:

### "AFFIDAVIT FOR SEARCH WARRANT

"I, William D. Kennedy, being first duly sworn on oath, depose and say:

"That I am a detective with the Lane County Sheriff's office and during my experience I have been involved in investigation of narcotics and marihuana. I personally know Roy Dirks, also a detective from the Lane County Sheriff's office, and know that he has been assigned in the past to the Lane Inter-Agency Narcotics Team, and has extensive experience in the investigation of drug offenses and is familiar with the packaging and keeping of marihuana.

"Roy Dirks has informed me at about 11:45 today, February 21, 1973, that Mrs. Margaret McKune, who lives on Gale Creek Road, off of Goodpasture Road, off of the McKenzie River Highway, who he believes is a reliable citizen, told him that she is renting a small cabin, approximately 70 feet east of her residence to John Warren Hanby. She said to Detective Dirks that she observed two white males, with long hair, unload several packages from the rear of a white vehicle, and carry the packages into the cabin to the east of McKune's residence. The packages were approximately six inches wide, by two and one-half inches high by ten inches long, Mrs. McKune informed Detective Dirks. She said that they appeared to be wrapped in light butcher paper, with tape around the edges.

"Detective Dirks also informed me that he talked with

■ ■ Defendant particularly challenges the reliability of the informants. Here, one informant was identified both by name and as a police officer actively engaged in an investigation at the site of the search. This is sufficient to support a finding of reliability of that informant. *State v. Miller*, 2 Or App 87, 465 P2d 894, Sup Ct *review denied* (1970), *cert denied* 406 US 974 (1972) ; *State v. Skinner*, 5 Or App 259, 263, 483 P2d

Heather Joan Keeling who told him today, February 21, 1973, she was told by John Warran Hanby that he (Hanby) uses marihuana.

"Detective Dirks informed me that he is personally familiar with John Warran Hanby, and that Hanby is involved in narcotic and dangerous drug trafficking.

"Detective Dirks also stated that from Mrs. McKune's description, the above-described packages are identical in size and shape to packages of marihuana that are referred to as kilos, which is about 2.2 pounds in weight.

"Detective Dirks also informed that he personally went to the cabin to assist in the serving of a subpena on John Warran Hanby, with Bill Menlow, an I.R.S. agent. While at the cabin, he saw in plain view on a kitchen counter, through the front door window, what he believes was a hash pipe, which is an instrument used for consuming hashish, a marihuana derivative. It was black and white, approximately 8' long, and resembling a reed in shape. He also noted what he believed was a strong odor of cut marihuana leaves, in an unburnt state, about the cabin.

"Detective Dirks is presently at Mrs. McKune's home on surveillance and I am going to take the search warrant to him immediately to serve it at once. He has informed me that to get to her house, one must go out U. S. Highway #126 to Goodpasture Road, right 4.4 miles to a row of mailboxes, one saying Rainbow Kennels, then turn right on Gale Creek Road and go to the Rainbow Kennels, which is the McKune Residence. The cabin, 70 feet to the east of the McKune residence contains the packages believed to contain marihuana.

"Based upon the foregoing facts, I have probable cause to believe that marihuana is currently located in the above-described cabin.

"WHEREFORE, your affiant prays that a search warrant issue for the search of the cabin located 70 feet to the east of the Rainbow Kennels on Gale Creek Road."

87, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972). The reliability of the "citizen informer," Mrs. McKune, by reason of her having been identified both by name and as the owner and landlord of the premises searched, was also sufficiently established. *State v. Poteet,* 9 Or App 231, 235-36, 495 P2d 783, Sup Ct *review denied* (1972).

The second assignment asks us to reverse the judgment because of certain remarks made by the prosecutor in the opening portions of his final argument. Defendant in effect contends that the trial court, on its own motion, should have declared a mistrial,[2] despite the fact he made no such request.

The comments objected to related to the defendant's financial ability to employ "one of the finest defense attorneys in this state, and Mr. Morrow doesn't come cheap, and he spends all the money to hire Mr. Morrow and Mr. Roloff."

The record shows that the defendant objected to the challenged remarks. The court correctly sustained his objection. *See* Annotation, 36 ALR3d 839, 859-62 (1971). Defendant concedes, however, that he made no motion for a mistrial at any time.

The decision to move for a mistrial involves much more than belief in the existence of error. Essentially it involves overall considerations of trial strategy. When such a motion is granted, it terminates the

---

[2] The double jeopardy problems presented and the dangers to be apprehended when in a criminal case a mistrial is declared are discussed at length in Annotation, 63 ALR2d 782-808 (1959). *See also:* United States v. Jorn, 400 US 470, 91 S Ct 547, 27 L Ed 2d 543 (1971). In view of *Jorn,* we doubt whether a trial judge sua sponte should declare a mistrial in a criminal case in the absence of a motion by the defendant so requesting. *See also:* Illinois v. Somerville, 410 US 458, 93 S Ct 1066, 35 L Ed 2d 425 (1973).

trial. Its granting is not appealable since it results not in a judgment but simply in a new trial. *United States v. Kaufman,* 311 F2d 695 (2d Cir 1963); *People ex rel. Ludwig v. McDonnell,* 2 Misc 2d 111, 149 NYS2d 786 (S Ct), *dismissed* 1 NY2d 830, 153 NYS2d 214, 135 NE2d 720 (1956); 24 CJS 1001, Criminal Law § 1647. Thus, the offended litigant must swiftly appraise the current status of his case to determine whether it is in fact in his interest to terminate the present trial despite the claimed error.

5. Here, however, nothing was presented to the trial judge upon which he might have ruled. In *State v. Howes,* 14 Or App 436, 512 P2d 1357 (1973), we said:

> "We fail to see how the trial judge can be charged with error when he was never presented the opportunity during the trial to rule. *State v. Jorgensen,* 8 Or App 1, 492 P2d 312 (1971), Sup Ct *review denied* (1972)."

*See also: State v. Miller,* 1 Or App 460, 463, 460 P2d 874, Sup Ct *review denied* (1970).

Furthermore, because the argument of counsel may, in a given case, be deemed to have been improper, it does not necessarily follow that even when properly raised a mistrial should be granted or that the cause must be reversed. *State v. Miller,* supra. In 36 ALR3d 839, 860 (1971), the annotator points out:

> "Although prosecution arguments referring to defendant's ability to employ counsel, or pay high fees, or finance his own defense, are nearly always regarded as improper, they have been held in a number of cases, under the particular circumstances there presented, not to require reversal."

In the final analysis, then, the granting of a motion for a mistrial by a defendant must depend upon the par-

ticular facts. The trial court has wide discretion in the granting or denial of such a motion. *State v. Gairson,* 5 Or. App 464, 484 P2d 854, Sup Ct *review denied* (1971). The assignment is without merit.

The final assignment challenges the failure to give an instruction which was neither requested nor was any exception taken to the alleged failure. We decline to notice it.

Affirmed.