Argued and submitted January 22, resubmitted In Banc June 9, affirmed July 28, reconsideration denied October 13, petition for review denied November 2, 1993
(318 Or 26)

# GLEN KOENNECKE,
*Appellant,*

*v.*

# STATE OF OREGON,
*Respondent.*

(C910879CV; CA A76059)

857 P2d 148

George W. Kelly, Eugene, argued the cause for appellant. With him on the brief was James Niedermeyer, Portland.

Ann F. Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

De Muniz, J., dissenting.

## EDMONDS, J.

Petitioner appeals the denial of his petition for post-conviction relief.[1] ORS 138.510 *et seq*. He seeks to set aside his conviction for menacing, ORS 163.190, on the ground that his rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution were denied. He argues that the post-conviction court erred in refusing to allow him to subpoena the jurors who returned the guilty verdict and in declining to consider hearsay testimony of alleged juror misconduct. We affirm.

Shortly after his trial on the menacing charge, a co-worker of a juror contacted petitioner's attorney and reported what the juror had said to him.[2] As a result, petitioner filed this petition for post-conviction relief. He then moved for an order permitting him to interview the jurors or subpoena them for examination before the court. At the hearing on the motion, the juror's co-worker said that he had discussed the trial with the juror, and the juror indicated that another juror had volunteered information about petitioner. The co-worker testified:

> "[The juror] had some confusion but that someone in that room had said that this guy has a reputation for doing that sort of thing with a gun. People know about it."

The post-conviction court held that petitioner had failed to establish reasonable grounds to believe that the jury had been guilty of misconduct and denied his request to interview or subpoena the jurors. During the post-conviction relief hearing, petitioner offered a tape recording of the co-worker's testimony as evidence of juror misconduct. The court rejected the tape recording as hearsay and granted the state's motion for a directed verdict.

■ Petitioner asserts that it was error for the court to deny him leave to interview or subpoena the jurors. The state

---

[1] This is petitioner's third appeal concerning the menacing convictions. The first was a direct appeal, which we affirmed without opinion. *State v. Koennecke*, 102 Or App 522, 795 P2d 124 (1990). The second was dismissed because the appeal was taken from a non-appealable post-judgment order.

[2] The record is unclear as to if and when the issue of jury misconduct was raised or could have been raised in the criminal proceeding. Because of the state of the record, we are unable to determine whether the issue raised by petitioner is precluded by ORS 138.550(2).

argues that, "even if the facts were as petitioner alleged, the alleged juror's 'misconduct' would not support a grant of a new trial." ORS 138.530(1)(a) provides that post-conviction relief is available only if there exists a "substantial denial [of petitioner's rights under the constitution] in the proceeding resulting in petitioner's conviction." The term "resulting in," as used in ORS 138.530(1)(a), requires that petitioner allege and prove that the constitutional violation was a material factor leading to his conviction. ORS 138.620; *Barnes v. Cupp*, 44 Or App 533, 538, 606 P2d 664, *rev den* 289 Or 587 (1980), *cert den* 449 US 1088 (1981).

At the criminal trial, the evidence was that a person entered petitioner's home without invitation and then refused to leave. As a result, petitioner fired a gun. His defense apparently was twofold: first, that the victim was not present when the gun was fired, and second, that petitioner was justified in firing the gun in order to end the trespass.

From the record made by petitioner in support of his motion to interview or subpoena the jurors, it is not apparent how the information that allegedly was furnished to the jury might have affected the verdict. Moreover, the decision to allow litigants to inquire of jurors about jury misconduct after a verdict is within the trial court's discretion. *Ertsgaard v. Beard*, 310 Or 486, 800 P2d 759 (1990). There is a strong policy in Oregon to protect jury verdicts from attack, and courts are hesitant to interrogate jurors after they have reached a verdict in order to probe for potential misconduct. *State v. Gardner*, 230 Or 569, 371 P2d 558 (1962). The rationales for this policy include freedom of deliberation, stability and finality of verdicts and protection of jurors from annoyance and embarrassment after they have performed their civic duty and rendered a verdict. That policy is codified in UTCR 3.120, which provides, in part:

"(1) Except as necessary during trial, and except as provided in subsection (2), parties, witnesses or court employes shall not initiate contact with any juror concerning any case which that juror was sworn to try.

"(2) After a sufficient showing to the court and on order of the court, a party may have contact with a juror in the presence of the court and opposing parties when:

"* * * * *

> "(b)   there is a reasonable ground to believe that a juror or the jury has been guilty of fraud or misconduct sufficient to justify setting aside or modifying the verdict or judgment."

In light of these considerations, the trial court did not abuse its discretion when it refused to allow petitioner to interview or subpoena the jurors.

■      Petitioner also assigns error to the refusal of the post-conviction court to admit into evidence the tape recorded statement of the co-worker repeating what the juror told him. Petitioner offered the testimony under OEC 803(25),[3] which provides an exception to the hearsay rule:

> "(a)   A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

> "(A)   The statement is relevant;

> "(B)   The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

> "(C)   The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence."

The legislative commentary to OEC 803(25) states that the legislative assembly

> "intends that these provisions be used very rarely, and only in situations where application of the hearsay rule and its other exceptions would result in injustice. These rules are not a broad grant of authority to trial judges to admit hearsay statements." Kirkpatrick, *Oregon Evidence* 607 (2d ed 1989).

In light of the rule's requirement of an equivalent circumstantial guarantee of trustworthiness as exists in other recognized exceptions, and the absence of such a guarantee here, the trial court did not abuse its discretion by excluding the statement. *See State v. Mendez*, 308 Or 9, 18, 774 P2d 1082 (1989).

Affirmed.

---

[3] The parties agreed that the tape recording could be used in lieu of the witness' testimony if his testimony about what he had been told by the juror was admissible.

**De MUNIZ, J.,** dissenting.

Assume, for the moment, that the jury arrived at its verdict by relying on the personal knowledge of one of its members about petitioner's "reputation for doing that sort of thing with a gun." 122 Or App at 102. Assume also, that the jury would have acquitted petitioner, but for its reliance on personal knowledge as a substitute for evidence.[1] In safeguarding the sacrosanctity of the jury's deliberations, the majority prevents petitioner from discovering information that would establish that a substantial denial of his constitutional rights resulted in his conviction. I believe that petitioner's interest in being tried solely on the evidence that was presented at his trial outweighs the jurors' interest in freedom from "annoyance and embarrassment." 122 Or App at 103.

The majority relies on *Ertsgaard v. Beard*, 310 Or 486, 800 P2d 759 (1990), but that reliance is misplaced. In *Ertsgaard*, the court considered the factors that weighed against granting a new trial in the face of jury misconduct. 310 Or at 497. The majority suggests that the *Ertsgaard* court found that an inquiry into the jury's deliberative process was inappropriate. To the contrary, the court recognized that juror misconduct may comprise

> "things only another juror could know. It follows that only another juror, by affidavit or live testimony, could bring such misconduct to the judge's attention. The trial judge properly considered these affidavits." 310 Or at 496.

It was only after weighing the evidence of jury misconduct that the Supreme Court concluded that the trial court had abused its discretion by ordering a new trial.

There are two critical differences between this case and *Ertsgaard*. First, *Ertsgaard* was a direct appeal from a civil case in which the trial court granted a plaintiff's motion for a new trial. A trial court's decision on a motion for a new trial involves the exercise of its discretion. 310 Or at 496. In

---

[1] Article I, section 11, prohibits a jury from using the personal knowledge of its members as a substitute for evidence. *State v. Cervantes*, 118 Or App 429, 434, 848 P2d 118 (1993).

contrast, this is a post-conviction proceeding in which petitioner alleges that he was substantially denied his constitutional right to a trial by the jury on the evidence. If petitioner were to prove his allegations, then the post-conviction court would be required to grant relief.[2] Second, the trial court in *Ertsgaard* considered the evidence of juror misconduct before making its decision to grant a new trial. The Supreme Court held that it was proper for the court to consider that evidence, although it erred by granting a new trial. In contrast, the post-conviction court and the majority will not even allow petitioner to discover the only evidence that could possibly support his claim.

The state has successfully misdirected the majority's attention by asserting, "even if the facts were as petitioner alleged, the alleged juror's 'misconduct' would not support a grant of a new trial." 122 Or App at 103. I agree that the juror's purported statement would not, by itself, establish that petitioner is entitled to relief. However, the majority asserts that "it is not apparent how the information that allegedly was furnished to the jury might have affected the verdict." 122 Or App at 103. Whether petitioner has a reputation for "doing that sort of thing with a gun" goes directly to his defense that he was justified in firing the gun. Whether or not the juror made the remarks that the co-worker attributed to the juror is not the dispositive factual issue. The dispositive factual issues are whether the jury considered evidence outside the record and, if it did, whether that extra-record evidence affected its verdict. If so, then the juror's misconduct was a "material factor" that impermissibly "result[ed] in" petitioner's conviction. ORS 138.530(1)(a); *Barnes v. Cupp*, 44 Or App 533, 538, 606 P2d 664, *rev den* 289 Or 587 (1980), *cert den* 499 US 1088 (1981).

---

[2] ORS 138.530(1) provides, in part:

"Post-conviction relief pursuant to ORS 138.510 to 138.680 *shall be granted* by the court when one or more of the following grounds is established by the petitioner:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction * * * of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." (Emphasis supplied.)

The word "shall" creates a mandatory duty to grant relief when a petitioner establishes grounds therefor. *Dika v. Dept. of Ins. and Finance*, 312 Or 106, 109, 817 P2d 287 (1991).

In my view, the juror's purported statement seriously raises the possibility that it caused a substantial denial of petitioner's constitutional rights. Petitioner is entitled to find out. The post-conviction court erred by denying his motion for an order allowing his attorney to interview, obtain affidavits from and possibly subpoena the jurors who convicted him.

I dissent.

Rossman, Durham and Leeson, JJ., join in this dissent.