Argued and submitted October 15, 1997, reversed and remanded for further
proceedings February 4, petition for review denied June 2, 1998 (327 Or 192)

Sandra RATLIFF,
*Appellant,*

*v.*

Susan DeMARINIS, D.C.,
*Defendant,*

*and*

Jeff NELSON, D.C.,
*Respondent.*

(94-1672-L-6; CA A96330)

954 P2d 209

Thomas C. Howser argued the cause for appellant. On the brief was Robert W. Good.

Paul L. Roess argued the cause for respondent. With him on the brief were Frank A. Moscato and Moscato, Skopil & Hallock.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Plaintiff filed a chiropractic malpractice claim in circuit court. Following trial, the jury returned a verdict for defendant. This appeal arises out of plaintiff's subsequent motion to examine two of the jurors who were on the panel to determine whether there was an improper communication between the court and the jury while the jury was deliberating. Plaintiff appeals from an order of the trial court denying the motion. We reverse.

In support of the motion, plaintiff offered the affidavit of a physician who testified as an expert for plaintiff in the malpractice trial, which took place in June 1996. The affiant averred that after trial, in mid-August 1996, he was shopping at a grocery store when he recognized one of the employees there as having been a juror in the malpractice case. The two struck up a conversation about the trial, and the former juror described some of the jury's deliberations. The affiant stated:

> "He stated that at one point, well into their deliberations, the jury was deadlocked. At that time they communicated to the court that they needed additional information and that they were unable to reach a decision. The court apparently informed the jury that they needed to reach a decision that evening and that the information they requested was not available to them."

The affidavit was filed with the court in October 1996. A hearing was held on plaintiff's motion in January 1997 before Judge Schiveley, who had presided over the trial. He denied the motion.

■        Plaintiff's sole assignment of error is that the court should have granted the motion to examine the jurors. The reason for the motion was to permit inquiry concerning whether there had been an improper communication between the court and the jury. The parties agree that *if there was any communication* by the court to the jury, an inquiry should be made to determine whether it complied with ORCP 59 (C)(5), (D), and that noncompliance could constitute reversible error or a ground for a motion for new trial. *Huntley v. Reed*, 276 Or 591, 594, 556 P2d 122 (1976). The only question on appeal is whether the court abused its discretion

in denying plaintiff the opportunity to examine the jurors to determine whether the communication occurred. *State v. Wright*, 323 Or 8, 20, 913 P2d 321 (1996); *State v. Jones*, 126 Or App 224, 227, 868 P2d 18, *rev den* 318 Or 583 (1994).

The trial judge gave his recollection of what transpired:

> "Court:    The motion and the affidavit would imply that the Court, *namely me,* had some sort of ex parte contact with a juror or with the jury and told them to continue deliberations, outside the presence of counsel and the parties and I categorically deny that. I have, if I ever have contact with a jury it is either in writing after having consulted with the attorneys and the parties or I bring them into court to talk with them. As I rack my brain to think about this the only thing I can think of is my recollections * * * that I may have asked the bailiff to inquire of the jury if they wanted us to order dinner for them.
>
> "[Defendant's counsel]:    And I think you did.
>
> "Court:    [A]nd I think they told us no, they did not wish to order dinner. * * * Does that jibe with your recollection, Mr. Moscato [defendant's counsel]?
>
> "[Defendant's counsel]:    It does your honor and I do have a vague recollection.
>
> "* * * * *
>
> "[Plaintiff's counsel]:    I recall those things as well. They're very vague and I remember us all sitting over there in the jury box for some time and [the bailiff] talking to us about, something about dinner." (Emphasis supplied.)

For his concluding remarks, plaintiff's counsel said:

> "Well I appreciate the position that we put you in in making this sort of, as it were, accusation. And I'm not sure exactly what the next step is. I guess my review of case law is that if there is this sort of allegation that, particularly if it's a legitimate one, and our position here is that this is a respectable member of the community, a physician, who had this conversation and the case law is clear that this is the kind of communication that needs to be delved into. And there's a case that's right on point that was actually, had to do with Judge Sawyer of this court. Of, where Judge Sawyer represented certain things about what happened

and there were jurors that had a different, a very different, recollection of what happened. And the Court of Appeals said this is precisely why such a motion needs to be granted, because there cannot be this sort of communication. If there is any sort of disparity or misunderstanding about this communication it must be cleared up. And that's the purpose of * * * [ORCP] 59 D."[1]

There was further colloquy, in which plaintiff's attorney provided the court with a copy of *Huntley*. The court then asked plaintiff's attorney if he had anything further to say, and the attorney replied that he would rely on the position taken in his memorandum. The court then held:

"The difference I see between *Huntley v. Reed* and the case before us is that in *Huntley v. Reed* it's clear that there was a communication between the judge and the jury and that no transcription was made and nothing in writing was kept apparently and then the trial judge in that case testified in some sort of follow-up hearing as to his recollection of that communication. And that case goes on to hold essentially that his recollection is not sufficient, that we should examine the jurors to find out what their recollection was and find out if it's different. Here, however, there was no communication and there's nothing to report. * * * Consequently, I'm going to deny the motion to examine the jurors in this case[.]"

The hearing record and written memoranda of the attorneys focus specifically on whether the *judge* communicated with the jury.[2] At oral argument on appeal, plaintiff's counsel for the first time asserted that the "court," as used in the affidavit, includes the *bailiff*, and that the record at the hearing is sufficient to justify an inquiry into whether the *bailiff* had an improper communication with the jury. If, as is now suggested, the *bailiff* told the jury that it could have no

---

[1] ORCP 59 D provides, in part:

"After retirement for deliberation, if the jury requests information on any point of law, the judge may require the officer having them in charge to conduct them into court. Upon the jury being brought into court, the information requested, if given, shall be given either orally or in writing in the presence of, or after notice to, the parties or their counsel."

[2] We note that no contention has been made, below or on appeal, that the trial judge should have recused himself on the motion because his impartiality had been compromised.

additional information and that it was required to reach a verdict that night, that conduct would most certainly have been improper, *Oien v. Bourassa*, 221 Or 359, 351 P2d 703 (1960), reaching far beyond the bailiff's custodial responsibilities to inquire about dinner. *Carson v. Brauer*, 234 Or 333, 382 P2d 79 (1963). However, in the absence of any suggestion at the hearing or in the parties' legal memoranda that the *bailiff's* conduct was being called into question, we conclude that that question was not raised below, and we decline to consider it.

Thus, the only remaining issue is whether the court abused its discretion in determining on this record that there should be no inquiry of the jury into the alleged improper communication between the judge and the jury. We conclude that it did. The Supreme Court has emphasized the sanctity of the jury verdict and the strong "antagonism" to inquiring beyond it. *Niemela v. Collings,* 267 Or 369, 372, 517 P2d 268 (1973); *see Koennecke v. State of Oregon*, 122 Or App 100, 103, 857 P2d 148 (1993). However, when as here, the judge's own credibility is at issue with regard to whether there was a communication, we hold that it is an abuse of discretion for the judge to refuse to allow an inquiry of jurors for the limited purpose of taking evidence as to whether there was such a communication between the judge and the jury. Accordingly, we conclude that the trial court erred in declining to permit an inquiry of the two jurors for the purpose of determining whether there was an improper communication between the judge and the jury.

Reversed and remanded for proceedings not inconsistent with this opinion.