Argued and submitted October 13, affirmed December 13, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES ROBERT JOSEPH CHENEY,
*Appellant.*

(98011CR; CA A105204)

16 P3d 1164

Lawrence Matasar argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction and sentence for four counts of sexual abuse in the first degree. ORS 163.427. He assigns error to: (1) the trial court's failure to grant a mistrial based on improper "vouching" by the prosecutor in her rebuttal closing argument; and (2) the court's denial of his motions for a new trial or to interview jurors based on allegations that jurors had discussed extra-record information during their deliberations. We conclude that defendant did not timely object to the prosecutor's "vouching" and that the trial court was not obligated to grant a mistrial *sua sponte* based on the prosecutor's conduct. We further conclude that the court did not abuse its discretion in denying defendant's post-trial motions pertaining to the jury's deliberations. *See Koennecke v. State of Oregon*, 122 Or App 100, 857 P2d 148 (1993). Accordingly, we affirm.

In January 1998, defendant allegedly initiated improper sexual contact with the nine-year-old daughter of a long-time family friend. The girl's 12-year-old brother observed the incident and called his grandparents, who notified the police.

Defendant was subsequently charged with four counts of sexual abuse based not only on the January 1998 incident, but also on alleged contacts in November 1996 and during a 1997 camping trip. Those charges were tried to a jury over six days in December 1998. During closing argument, defense counsel contended that the police and the prosecutor were "desperate" to obtain a conviction because of "ego":

> "The State is desperate to get a conviction. This is a big deal. Resources are put into this and, frankly, there's egos too. The State is trying to twist [defendant's] statements to people to make you think it's some kind of confession. * * * And once the district attorney gets involved, there's—there's, you know, there's no stopping it. The—the freight train is on the tracks and it's going down the road and the kids are on board and they know that everyone's relying upon them. This is really a big show."[1]

---

[1] Earlier in his closing, defense counsel had asserted: "[M]y position is that the State is desperate in this case. They've twisted the evidence * * *."

The prosecutor did not object. Instead, in rebuttal closing, she responded:

> "My job as a prosecutor—and I've been a defense attorney. I've been where [defense counsel] is sitting right now. And the role I have now is very different. I cannot just advocate for whatever my client tells me to say. And whether it's true or not. I cannot get up here and say that. *My job, by law, is I—I can only advocate for cases where I believe that it's true, where I believe that it happened. If I think it's a close case, if I think it's a case I could win, and I still don't feel good about it, I'm required by law not to go through with it.* That's a very different job than [defense counsel] has. Very different.

> "And what is the job of the police in this particular case? What did they tell you? There are many cases where we do not recommend prosecution. There are many cases that we find unfounded and we don't go ahead with those. *And its only on true cases that we are required to recommend prosecution.*" (Emphasis added.)

Defense counsel did not object to the prosecutor's statements when they were made. Rather, counsel waited until after the end of the rebuttal closing—10 transcript pages later—to move for a mistrial. Counsel argued that the prosecutor's remarks were improper in that they "indicated personal knowledge of [the] truth of the allegations in this case."

The trial court agreed that the prosecutor's statements were improper. Nevertheless, the court denied the motions for mistrial and offered, instead, to give a curative instruction. Defense counsel accepted that offer, and the court subsequently instructed the jury:

> "The attorneys' statements and arguments are not evidence. If your recollection of the evidence is different from the attorneys' recollection, you must rely on your own memory. Personal beliefs asserted by either counsel in closing arguments as to the truth or falsity of facts is not to be considered by you. You are the sole judges of the facts."

The jury convicted defendant on all four counts.

After the verdict, but before sentencing, defendant and the state entered into an agreement by which defendant

agreed not to seek a new trial and to admit guilt in open court in return for receiving concurrent, rather than consecutive, Ballot Measure 11 sentences of 75 months on all four counts.[2] Defendant was subsequently sentenced to 75 months in prison.

Shortly after sentencing, defendant retained new counsel. Defendant, through his new counsel, then filed a motion for a new trial or, alternatively, for an order allowing juror contact. Both motions asserted that defendant had obtained evidence that, during their deliberations, jurors had considered extra-record information that defendant had previously engaged in sexual misconduct. Submitted with the motions were the affidavits of two citizens, Mitchell and Vaday, neither of whom had served on the jury. Mitchell averred:

"1.  I work with a man, Larry Zorza, who was on the jury in this case.

"2.  In a conversation I had with Mr. Zorza a day or two after the verdict, Mr. Zorza told me that he had heard that defendant had gotten kicked off a construction job he was doing for a doctor because of something he did in the doctor's home that was similar to the conduct alleged in the trial.

"3.  In the same conversation, Mr. Zorza stated that he heard that there was another young female whom the defendant had sexually abused but that her mother refused to let her testify in the trial.

"4.  When Mr. Zorza gave me this information, it was my understanding that he learned about these other incidents while he was on the jury and that these matters were discussed by the jury.

"5.  Although Mr. Zorza later told me that he learned the information about the defendant after the trial was over, I continue to believe, based on his words and based on the manner in which he provided this information to me, that he learned about this information during the trial."

Vaday averred:

---

[2] That agreement appears to have been motivated, at least in part, by controversy in the community concerning defendant's conviction.

"1.   I am a friend of John Schlosser, who was a member of the jury in this case.

"2.   Mr. Schlosser told me on the telephone on December 20, 1998 that during jury deliberations another juror told the jury that the defendant had 'done this before.' "[3]

The trial court denied defendant's motions on three alternative grounds. First, defendant's presentencing agreement with the state waived any entitlement to seek a new trial. Second, the Mitchell and Vaday affidavits were inadmissible in that their substance "is at least double hearsay." Finally, even if those affidavits were admissible and credited, they were insufficient to satisfy Oregon's "high standard" for impeaching a verdict. In so ruling, the court relied on *Koennecke v. State of Oregon*.

On appeal, defendant contends that the trial court erred in denying: (1) a mistrial based on the prosecutor's "vouching" in closing argument; (2) leave to contact jurors regarding the alleged misconduct; and (3) a new trial based on that alleged juror misconduct.[4] We review each ruling, in turn, for an abuse of discretion. *State v. Wright*, 323 Or 8, 20, 913 P2d 321 (1996) (denial of motion to interview jurors); *State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990) (disposition of motion for mistrial reviewed for abuse of discretion); *State v. Booth*, 124 Or App 282, 292, 862 P2d 518 (1993) (denial of motion for new trial).

Defendant's contention that the trial court erred in failing to grant a mistrial is based on two related, but alternative, grounds. First, the court should have granted defendant's motion for mistrial. Second, even if that motion was untimely, the prosecutor's conduct was so egregious that the court was obligated to grant a mistrial *sua sponte*.

---

[3] On appeal, the state notes that the trial court correspondence file includes a December 15, 1998, letter to the trial judge purportedly written by Vaday, expressing the view that defendant had been wrongly convicted. That letter was never offered and admitted into evidence at the hearing on defendant's post-trial motions. Accordingly, that letter is not before us.

[1] The state moved to dismiss this appeal as being barred by the parties' presentencing agreement. We denied that motion, finding that the agreement did not constitute "an agreement to forego taking an appeal."

■  Defendant's first argument fails because his motion for a mistrial was untimely. That is, it was not "made as soon as the objectionable statement[s]" were made. *State v. Barone*, 328 Or 68, 90, 969 P2d 1013 (1998). In such circumstances, "[T]he mistrial request was untimely and, consequently, did not preserve the alleged underlying error for review." *Id.*

We and our Supreme Court have consistently adhered to that principle. *State v. Williams*, 322 Or 620, 630-31, 912 P2d 364 (1996), is exemplary. There, counsel (unlike counsel here) timely objected to remarks in the prosecutor's rebuttal argument but did not request that those comments be stricken and did not move for a mistrial until after the jury had been instructed. The trial court denied a mistrial and, on appeal, the Supreme Court refused to review the defendant's assignment of error challenging that ruling:

> "To preserve error, a motion for a mistrial must be timely. It is timely if it is made when the allegedly objectionable statement was made. Defendant's motion here was not timely and, thus, that claim of error was not preserved for review. We decline to consider defendant's argument." *Id.* at 631.

*See also State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991) (describing preservation principle);[5] *State v. Tetukevich*, 121 Or App 449, 451, 855 P2d 1137 (1993) ("Defendant's motion [for mistrial based on improper prosecutorial argument] was not timely, and he has not preserved the claim of error.").

That principle controls. Defendant's tardy mistrial motion failed to preserve any reviewable objection to the prosecutor's remarks.[6]

---

[5] In *Walton*, the court explained:

"To preserve error, a motion for a mistrial must be timely. It is timely if it is made when the allegedly objectionable statements were made. Defendant's motions here were not timely made and, thus, this claim of error was not preserved for appeal, and we decline to consider defendant's argument." 311 Or at 248 (citations omitted).

[6] While *Barone*, *Williams*, and *Walton* characterize the lack of a timely objection to allegedly improper comments by counsel as a matter of nonpreservation, the Oregon Supreme Court has also treated similar inaction as effecting a waiver of any error. In *Blanton v. Union Pacific Railroad Co.*, 289 Or 617, 623, 616 P2d 477 (1980), the court observed:

Defendant's alternative argument—that the trial court was obligated to grant a mistrial *sua sponte*—requires more extended discussion. That is so, in part, because it is not clear whether an Oregon judge is *ever* required to grant a mistrial *sua sponte* based on improper argument. *Compare State v. Simonsen,* 329 Or 288, 300-01, 986 P2d 566 (1999), *with State v. Montez,* 324 Or 343, 356-57, 927 P2d 64 (1996) (*Montez II*), *with State v. Montez,* 309 Or 564, 601-02, 789 P2d 1352 (1990) (*Montez I*). *See generally Walton,* 311 Or at 248 n 15 ("Mistrials granted *sua sponte* are disfavored because of the former jeopardy problems they may create."). *Montez I,* 309 Or at 601-02.

In *Montez I,* the defendant contended that the prosecutor had commented, in closing argument, on the defendant's failure to testify. Defense counsel did not object to those comments, much less move for a mistrial. Rather, on appeal the defendant contended for the first time that the trial court had erred in failing to act *sua sponte* by striking the allegedly improper remarks, by giving a curative instruction, or by granting a mistrial. The defendant asked the Supreme Court to consider the trial court's failure to act *sua sponte* as error apparent on the face of the record. ORAP 5.45(2). The court—without considering whether, or in what circumstances, a trial judge could be under an obligation to act *sua sponte*—declined to do so.

In *Montez II* (which followed the remand for resentencing in *Montez I*), the defendant contended that the trial court erred in failing to grant a mistrial *sua sponte* based on comments by the prosecutor during closing argument.[7] The

---

"An objection generally should be made as soon as its applicability is, or should have been, known to the opponent. Defendant's counsel made no objection to the comments of plaintiff's lawyer until after the opening statement had been completed. We have no doubt that had objection been made to the first allegedly improper statement, the objection would have been sustained and plaintiff's counsel would have been instructed to forbear referring to evidence of defendant's fault. Instead, defendant's counsel opted to wait until the completion of plaintiff's opening statement, and then move for a mistrial. In circumstances such as this, timely objection is required. Failure to promptly object, under the facts of this case, waives the objection."

[7] The prosecutor's remarks arguably suggested that, because the defendant had committed the murder while on temporary release status, the jury should impose the death penalty "to avoid the possibility of his early release from a sentence of life imprisonment." *Montez II,* 324 Or at 356-57.

defendant acknowledged that his counsel had not objected to the prosecutor's remarks, or otherwise acted to preserve the alleged error, but urged the Supreme Court to review the matter as error apparent on the face of the record. The court responded:

> "Error is apparent on the face of the record only when the legal point is obvious, not reasonably in dispute. Applying that standard, the trial court's failure to grant a mistrial *sua sponte* constitutes reversible error only if it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial. We conclude that the prosecutor's comments were not so prejudicial that the trial court's failure to grant a mistrial *sua sponte*, on the basis of those comments, amounts to an error of law apparent on the face of the record. Consequently, we reject defendant's argument." *Montez II*, 324 Or at 357 (citations and internal quotation marks omitted).

Thus, in *Montez II*, the court implicitly assumed that a trial court's failure to grant a mistrial *sua sponte* based on an improper argument could be reversible plain error—that is, that, in appropriate circumstances, the court could be obligated to declare a mistrial *sua sponte*. Nevertheless, addressing the merits, the court concluded that it was not "beyond dispute" that the prosecutor's remarks were "so prejudicial as to have denied [the] defendant a fair trial." *Id.*

■ Finally, in *Simonsen*, the defendant assigned error to the trial court's failure to declare a mistrial *sua sponte* based on the prosecutor's statements in closing argument, including that "the jurors' duty was to sentence [the] defendant to death." 329 Or at 300. Again, the defendant had made no objection at trial. In rejecting that argument, the Supreme Court did not refer explicitly to any *sua sponte* obligations of the trial judge, nor did the court frame its discussion in "plain error" terms. Indeed, the court did not refer to either *Montez I* or *Montez II*. Rather, the court noted that, even if the defendant had timely moved for a mistrial, the denial of that motion would have been reviewed for abuse of discretion and that, in the circumstances presented, such a denial would not have been an abuse of discretion:

> "[D]efendant argues that the trial court legally was obliged to declare a mistrial on its own motion. It was not.

Indeed, as we explain below, we hold that the trial court would not have erred in denying such a motion, even had such a motion been timely made.

"We review a trial court's failure to grant an ordinary motion for mistrial for abuse of discretion. In such° cases, '[e]ven if we find the prosecutor's remarks to be improper, tasteless, or inappropriate, we will not find an abuse of discretion * * * unless the effect of the prosecutor's remarks is to deny a defendant a fair trial.'

"* * * * *

"[Here, t]he prosecutor's arguments, even if verging on sensational, were not so prejudicial that the trial court abused its discretion by failing to declare a mistrial *sua sponte*." *Simonsen*, 329 Or at 300-01, *quoting State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990).

Thus, in both *Montez II* and *Simonsen*, the court implied, but did not explicitly hold, that a trial court is obligated to grant a mistrial *sua sponte* if a prosecutor's comments are so prejudicial as to deny a defendant a fair trial.[8] However, *Montez II* held that the court's failure to act must satisfy the standard for "plain error," while *Simonsen* turned on an "abuse of discretion" analysis. We need not attempt to reconcile those variations here because, under either formulation, the trial court's failure to order a mistrial *sua sponte* in this case was not reversible error. *See State v. Parker*, 235 Or 366, 384 P2d 986 (1963).

At the outset, we emphasize that we do not endorse or condone the prosecutor's "vouching" remarks. Those remarks went well beyond the bounds of proper argument.[9]

[8] *Cf. State v. Bauer*, 16 Or App 443, 448, 519 P2d 96 (1974) (rejecting the defendant's contention "that the trial court, on its own motion should have declared a mistrial, despite the fact he made no such request," because, *inter alia*, "nothing was presented to the trial judge upon which he might have ruled. " * * 'We fail to see how the trial judge can be charged with error when he was never presented with the opportunity during the trial to rule.' ") (citations omitted).

[9] *See, e.g.*, DR 7-106(C)(4) ("In appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not assert the lawyer's personal opinion as to the justness of a cause * * * or as to the guilt or innocence of a criminal defendant."); American Bar Association's *Standards for Criminal Justice*, Standard 3-5.8 (3rd ed 1993) ("The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.").

Nevertheless, in *Parker*, the court declined to reverse a murder conviction based on similarly explicit and repeated "vouching" in the prosecutor's closing argument.

In *Parker*, the prosecutor repeatedly made remarks in closing argument "to the effect that the state's witnesses were telling the truth, that the state vouched for the credibility of its witnesses, and that the jury should believe the state's witnesses." *Parker*, 235 Or at 377. In particular, the prosecutor asserted, without objection, that:

- A key state's witness "was telling the truth. We wouldn't have her if she wasn't";

- The jury should "have a little reliance on the police officers, and if I may be so bold again on our office because these witnesses know what they are talking about. They testify to the truth, and [defendant] is guilty of killing [the victim]"; and

- "The State is not permitted to and has no right to permit or to call any witness to that witness stand that it cannot vouch for that witness' credibility to you one hundred per cent." *Parker*, 235 Or at 376-77, 377 n 7.

On appeal, the Supreme Court, after noting that the prosecutor's "vouching" was "improper," concluded that the remarks "are not ground for reversal." *Id.* at 377-78.

The prosecutor's statements here were similar to those in *Parker*. Both declaim that, as officers of the state, prosecutors are barred by law from bringing before the court witnesses or charges that are not "true." Given *Parker*'s conclusion that such statements did not warrant reversal, we cannot say that "it is beyond dispute that the prosecutor's comments were so prejudical as to have denied defendant a fair trial," *Montez II*, 324 Or at 357, or that the court's failure to direct a mistrial *sua sponte* represented an "abuse of discretion." *Simonsen*, 329 Or at 300. *See also Casciato v. Oregon Liquor Control Com.*, 181 Or 707, 715-16, 185 P2d 246 (1947) (trial court ruling represents an "abuse of discretion" only when it "exceeds the bounds of reason" or is "clearly against reason and evidence") (citations and internal quotation marks omitted).[10]

---

[10] *Cf. Carter v. Moberly*, 263 Or 193, 201, 501 P2d 1276 (1972) ("We simply determine whether on the facts of the particular case, the trial court's ruling was

■■ We note, moreover, that while not ordering a mistrial, the trial court did give a cautionary instruction. *See* 171 Or App at 404. Although such instructions do not inevitably remedy prejudice from improper argument,[11] it is by no means "beyond dispute" that the choice of a curative instruction in lieu of a mistrial was inadequate to remedy any prejudice[12] or, similarly, that the choice was beyond the bounds of reasonable discretion. *See, e.g., Smith,* 310 Or at 25 (reference to the possibility of parole in closing argument was cured by instruction that "life imprisonment means imprisonment for life"); *State v. Mechler,* 157 Or App 161, 165, 969 P2d 1043 (1998), *rev den* 328 Or 293 (1999) (where prosecutor responded to defense counsel's accusation that the state's witness was coached by telling the jury that "if you think I'm crooked, let [the defendant] go," and trial judge instructed the jury that, "[t]he attorney's statement and arguments are not evidence," the trial court "could reasonably conclude that * * * any prejudice caused by the remarks did not outweigh the court's instructions").

The trial court did not err in failing to direct a mistrial *sua sponte*.

We proceed to defendant's remaining assignments of error, which challenge the trial court's denial of defendant's post-trial motions based on alleged juror misconduct. In particular, defendant argues that the jury's alleged discussion of extra-record information that defendant had "done this before" violated his constitutional rights of confrontation, cross-examination, and assistance of counsel[13] and warranted a new trial. Alternatively, defendant asserts that, at

---

within the reasonable or permissible range. We need not determine whether his ruling was the only one possible.").

[11] *See State v. White,* 303 Or 333, 338, 344, 736 P2d 552 (1987) (reference to defendant's refusal to testify at a related trial was not cured by instruction that "that matter is not relevant in this case" and that "in no way are you to take that into account or in any way to discuss or consider [it] * * * It's not to be taken by you as any evidence of the case or have any place in this case.").

[12] Jurors are presumed to have understood and followed adequate instructions. *Smith,* 310 Or at 26.

[13] Defendant's constitutional arguments are based on Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. Article I, section 11, states, in relevant part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been

the least, the evidence he proffered of juror misconduct necessitated further inquiry, including juror interviews.[14]

■    As noted previously, 171 Or App at 405-06, defendant's motions were not supported by juror affidavits or direct communications to counsel from jurors. Rather, defendant submitted affidavits from two members of the community, recounting conversations with jurors. Affiant Mitchell stated that he had learned from juror Zorza that defendant had sexually abused other young girls before. Mitchell further stated that, although Zorza told him that he learned the information about defendant after the trial was over, he disbelieved Zorza and instead believed that the jury had considered the information during its deliberations. Affiant Vaday indicated that she had heard from a friend who was on the jury that one juror told the others that defendant had "done this before."

In denying defendant's motions, the trial judge concluded that the affidavits defendant submitted were not sufficient:

"Ms. [Vaday's] affidavit indicates that juror John Schlosser told her that another juror told the jury that [defendant] had done this before. Now, that is at least double hearsay, and accordingly the Court does not believe it's sufficient.

"Duane Mitchell's affidavit indicates that Larry Zorza had heard rumors about other bad acts by [defendant], but the same affidavit also states that Zorza said he learned these—learned of these bad acts after the trial. That affidavit clearly is not sufficient.

<hr>

committed; to be heard by himself and counsel; * * * [and] to meet the witnesses face to face * * *."

The Sixth Amendment states:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * to be confronted with the witnesses against him * * * and to have the Assistance of Counsel for his defence."

[11] As at trial, on appeal the state argues that pursuant to the presentencing plea agreement, defendant waived any right to seek a new trial in this case. Given our disposition, we do not reach, and imply no view as to, that argument.

"Neither affidavit offers direct evidence of juror impropriety * * *, and there is no indication of the required circumstantial guarantees of trustworthiness of the hearsay in the affidavits."[15]

In so ruling, the trial court explicitly relied on *Koennecke*, 122 Or App 100.

*Koennecke*, an en banc decision of this court, controls.

In *Koennecke*, the defendant was convicted, following a jury trial, of criminal menacing. ORS 163.190. Sometime after the trial, a coworker of one of the jurors contacted defense counsel and reported that, during deliberations, the jury had considered information that Koennecke had a reputation for engaging in menacing conduct. Based on that information, Koennecke sought post-conviction relief, asserting that the alleged jury misconduct violated his constitutional rights.[16]

In the context of the post-conviction proceeding, Koennecke moved to interview the criminal trial jurors and to subpoena them for examination before the court to investigate and substantiate his allegations of juror misconduct. *Koennecke*, 122 Or App at 102. The post-conviction court held an evidentiary hearing on the motion to interview jurors. During that hearing, the juror's coworker testified:

" '[The juror] had some confusion but that someone in that room had said that this guy has a reputation for doing that sort of thing with a gun. People know about it.' "

Koennecke, apparently, offered no other evidence. After considering that testimony, the post-conviction court denied Koennecke's motion to interview the jurors, holding that the "petitioner had failed to establish reasonable grounds to believe that the jury had been guilty of misconduct." *Koennecke*, 122 Or App at 102.

---

[15] The trial court's "Amended Order Denying Post-Trial Motions" essentially reiterated those same bases for denying defendant's motions.

[16] We noted that it was unclear whether the allegation of juror misconduct was raised or could have been raised in the criminal proceedings. *Koennecke*, 122 Or App at 102 n 2.

We affirmed. In so holding, we emphasized that "the decision to allow litigants to inquire of jurors about jury misconduct after a verdict is within the trial court's discretion." *Koennecke*, 122 Or App at 103. That discretion is, in turn, circumscribed by:

> "[A] strong policy in Oregon to protect jury verdicts from attack, and courts are hesitant to interrogate jurors after they have reached a verdict in order to probe for potential misconduct. The rationales for this policy include freedom of deliberation, stability and finality of verdicts and protection of jurors from annoyance and embarrassment after they have performed their civic duty and rendered a verdict." *Id.*, citing *Ertsgaard v. Beard*, 310 Or 489, 800 P2d 759 (1990); *State v. Gardner*, 230 Or 569, 371 P2d 558 (1962).

We concluded that, given those considerations, the trial court had not abused its discretion in denying the motion to interview or subpoena the jurors. *Koennecke*, 122 Or App at 103-04.[17]

Koennecke controls here. Specifically, with respect to both the content and the form of the evidence supporting the motion to interview, *Koennecke* is indistinguishable. The content of the allegations of misconduct here are the same as those in *Koennecke*. While in *Koennecke* the juror's coworker suggested that a member of the jury "had said that this guy has a reputation for doing that sort of thing [*i.e.*, menacing] with a gun," in this case both affiants asserted that the jury considered evidence that defendant had "done this before." Similarly, the form of the allegations in both cases was the same: Here, as in *Koennecke*, the only evidentiary basis for defendant's motion to interview the jurors was hearsay testimony from third parties regarding the substance of the

---

[17] Four judges dissented. *Koennecke v. State of Oregon*, 122 Or App at 105-07 (De Muniz, J., dissenting). The dissent argued that a criminal defendant's entitlement to being tried solely on the evidence presented at trial overrides a juror's freedom from "annoyance and embarrassment." *Id.* at 105. The dissent further asserted that, although the coworker's statement—or even the juror's purported statement—would not, by itself, compel the granting of new trial, it was unclear whether, or to what extent, the jury considered information outside the evidence, and, if it did, how that affected the verdict. *Id.* at 106. Given that ambiguity, the dissent suggested, the post-conviction court was obligated to inquire further and should have allowed the motion to interview the jurors. *Id.* at 105-07.

jury's deliberations. No direct statements or testimony from jurors were presented.

Given those material and almost exact parallels between this case and *Koennecke*, the trial court here—which explicitly relied on *Koennecke*—did not abuse its discretion in denying defendant's motion for an order permitting him to interview the jurors and investigate possible misconduct.

■ Similarly, the trial court did not abuse its discretion in denying defendant's motion for a new trial. *See State v. Jones*, 126 Or App 224, 227, 868 P2d 18 (1994) (trial court's denial of motions for new trial reviewed for abuse of discretion). Here, defendant based his request for a new trial on two third-party affidavits. The first, Mitchell's, fell short of even alleging hearsay evidence of misconduct; rather it was founded solely on Mitchell's *disbelief* of juror Zorza's assertion that he "learned the information about the defendant['s past misconduct] after the trial was over[.]" The second, Vaday's, simply made the unadorned allegation that the jury considered information that defendant had "done this before." Given that those allegations were insufficient even to compel further inquiry, *see Koennecke*, the trial court's denial of a new trial was, necessarily, within the range of reasonable discretion. *See State v. Miller*, 167 Or App 72, 75-76, 1 P3d 1047, *rev den* 330 Or 553 (2000) (while disposition of new trial motion is a matter within the trial judge's discretion, the evidence supporting the motion for a new trial must "meet a threshold level before the court has any discretion to exercise").

Affirmed.

**WOLLHEIM, J.,** concurring.

I concur with the majority's decision that the trial court did not abuse its discretion in denying defendant's post-trial motion to interview jurors and motion for a new trial. *Koennecke v. State of Oregon*, 122 Or App 100, 857 P2d 148, *rev den* 318 Or 26 (1993), mandates the result here. However, if I were writing on a clean slate, I would reverse based on the reasoning set forth in Judge De Muniz's dissent in *Koennecke*, 122 Or App at 105-07.