Argued and submitted July 9, affirmed August 28, 2002

Donna HERRON,
*Appellant,*

*v.*

Ray Victor GREWE, M.D.,
*Respondent.*

9403-01805; A112092

52 P3d 1106

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs were David J. Hollander and Hollander, Leberbaum & Grannicott.

Marjorie Speirs argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

## BREWER, J.

■ Plaintiff appeals from a judgment on a jury verdict for defendant in this medical negligence action. Plaintiff argues that the court erred in several respects relating to possible juror misconduct discovered by plaintiff's counsel when, at the conclusion of trial, a juror's notebook was mistakenly delivered to counsel. Defendant responds that the evidence of possible juror misconduct was not strong and that the court acted within its discretion in making the challenged decisions. We review the court's rulings for abuse of discretion, *State v. Moore,* 324 Or 396, 425-26, 927 P2d 1073 (1996); *State v. Cheney,* 171 Or App 401, 416, 16 P3d 1164 (2000), *rev den* 332 Or 316 (2001), and affirm.

For the purposes of our review, the following facts are not disputed. Plaintiff brought this action alleging that defendant had negligently performed surgery on her neck and had not obtained informed consent to implant an internal fixation device to stabilize her vertebrae. Regarding the informed consent issue, plaintiff testified that, while she was in the recovery room, defendant talked to her about the surgery. She stated that, during that conversation defendant told her that

> "he had gotten the disk out and while he was in there, he decided to put a plate and some screws in my neck. And that he wasn't sure if it was going to cause a problem, but that the plate was—the screws—the top two screws looked like they were in crooked, and he was having an x-ray done to look at that and then he would get back to me later."

Defendant, along with three other doctors, testified that, in their collective experience, people generally do not remember what is said to them in the recovery room after surgery. Plaintiff offered no countervailing testimony on that issue; however, plaintiff did cross-examine defendant's witnesses.

Also, as pertinent to the issues on appeal, plaintiff presented evidence that she suffered from bone spurs in her neck as a result of the improper implantation of the internal fixation device. There was no evidence concerning the extent to which the bone spurs could have contributed to plaintiff's pain.

In his closing argument, defendant's counsel emphasized the doctors' testimony that people generally do not later recall postsurgical conversations that occurred in the recovery room. He suggested that plaintiff either had a faulty memory of the conversation or that she was not being truthful regarding defendant's statements to her. At the conclusion of trial, the jury returned a verdict for defendant, finding that he was not negligent in any of the respects alleged by plaintiff.

After trial, plaintiff's attorney had a delivery service pick up his trial exhibits from the court. The delivery person picked up the materials given to him by the court clerk and delivered them to plaintiff's attorney. Among the materials was a notebook used by a juror to take notes during the trial. Plaintiff's attorney examined the contents of the notebook. On the sixth page of the notebook was written "I asked friend if remembered recovery room, no." On the seventh page was written "I looked up bone spur, causes no pain." Both entries were crossed out,[1] but close examination of the original notebook reveals the contents quoted above.

Based on the quoted notebook entries, plaintiff filed motions for a new trial and for leave to contact the jurors "for the purpose of determining additional facts to support Plaintiff's Motion for New Trial." Plaintiff argued that the notebook contained evidence suggesting juror misconduct—namely, that a juror conducted outside research on issues relevant to the case. The court denied both of plaintiff's motions.

"THE COURT: I'll start with the juror notebooks. Those are court property. The Court makes clear to the jurors they're not entitled to take those notebooks during recesses, that they're not entitled to have those notebooks after the conclusion of a trial. If they wish personal notes, those have to be taken outside of the courtroom on their own times, so to speak, at their own homes. They're court property.

---

[1] By "crossed out" we do not mean to suggest that there was simply a single line drawn through the writing. Instead, the lines on which the notes were written were scribbled over so thoroughly that a photocopy of the pertinent lines was illegible.

"They were by mistake collected with [plaintiff's counsel's] property. They should have been returned without having been read, just as a misdelivered fax or a misdelivered letter or another lawyer's trial file which is left in your office. It is not something that should be perused. That notebook should have come back without having been opened. What's in it should not be considered by this Court.

"* * * * *

"* * * [E]ven considering those notes, they give no cause to interfering with this trial process and have * * * another trial. They're expressions of one juror on trivial points. * * *

"* * * * *

"I'm denying the motion for a new trial. I'm not going to allow this Court to be in the process of bringing in any juror for any further intrusion into their processes. These jurors should have the expectation, I think I probably told them in this case, I do instruct them in many cases, when they deliberate, they're not being reported, what they do is not being taken down.

"* * * * *

"* * * [I]f we then bring them back in and start cross examining them, we've totally denied that and it affects other jurors in the future. Jurors have the right to feel that they can come into court, they can do their best, they can make their decision, and they're often difficult decisions. Then they ought to feel they can leave the courtroom and they're not going to have to be intruded upon by people who want to psychoanalyze them and cross examine them and criticize them about the process they went through in getting to the result that they got to.

"Because if we start doing that to jurors, it's going to be even more difficult to get jurors to serve and it is going to do a great disservice to the process and the quality of the result that's received. So we're going to have no further intrusion here."

On appeal, plaintiff advances three assignments of error. First, she challenges the trial court's refusal to consider the contents of the notebook. Second, she assigns error to the court's decision to deny juror interviews concerning the

alleged misconduct. Finally, she contends that the court erred in denying her motion for a new trial.

In response to plaintiff's first assignment of error, defendant asserts that the court did not err in refusing to consider the notes, because juror notes are confidential. With respect to the second and third assignments of error, defendant argues that the challenged decisions were within the limits of the trial court's discretion.

We need not decide whether the court erred in refusing to consider the notes because the court also concluded that, regardless of their status as confidential, the juror notes did not provide sufficient evidence to compel the court to conduct further investigation nor did they require the court to order a new trial. Because, as we now explain, those decisions were within the range of discretion available to the court, we conclude that it did not abuse its discretion. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (" '[D]iscretion' * * * refers to the authority of a trial court to choose among several legally correct outcomes."); *see also Moore*, 324 Or at 425 (reviewing for abuse of discretion both the denial of a motion for a mistrial and the denial of a motion for an evidentiary hearing to determine whether there was juror misconduct).

Whether the trial court was compelled to further investigate plaintiff's allegations of juror misconduct is informed by this court's decision in *Koennecke v. State of Oregon*, 122 Or App 100, 857 P2d 148, *rev den* 318 Or 26 (1993). In *Koennecke*, the petitioner appealed from a judgment denying him post-conviction relief. In the post-conviction proceeding, the petitioner had moved to interview the jurors from his criminal trial and to subpoena them for examination before the court to investigate, and he hoped substantiate, his allegations of juror misconduct. *Id.* at 102. The only evidence offered by the petitioner was testimony from a coworker of one of the jurors, who stated that " '[the juror] had some confusion but that someone in that room had said that this guy has a reputation for doing that sort of thing with a gun. People know about it.' " *Id.* After considering only that testimony, the post-conviction court denied the motion to interview the jurors. The court concluded that the "petitioner

had failed to establish reasonable grounds to believe that the jury had been guilty of misconduct * * *." *Id.*

We affirmed. We emphasized that "the decision to allow litigants to inquire of jurors about jury misconduct after a verdict is within the trial court's discretion." *Id.* at 103. That discretion, in turn, is circumscribed by

"a strong policy in Oregon to protect jury verdicts from attack, and courts are hesitant to interrogate jurors after they have reached a verdict in order to probe for potential misconduct. *State v. Gardner*, 230 Or 569, 371 P2d 558 (1962). The rationales for this policy include freedom of deliberation, stability and finality of verdicts and protection of jurors from annoyance and embarrassment after they have performed their civic duty and rendered a verdict." *Koennecke*, 122 Or App at 103.

*See also Ertsgaard v. Beard*, 310 Or 486, 800 P2d 759 (1990) (identifying a strong policy in favor of protecting secrecy of jury deliberations). We concluded that, given those considerations, the court had not abused its discretion in denying the motion to interview or subpoena the jurors. *Koennecke*, 122 Or App at 103-04.

The dissenting judges disagreed. The dissent argued that "[i]n safeguarding the sacrosanctity of the jury's deliberations, the majority prevents [the] petitioner from discovering information that would establish that a substantial denial of his constitutional rights resulted in his conviction." *Id.* at 105 (De Muniz, J., dissenting). Both the majority and the dissent recognized the tension between guaranteeing a *fair* jury trial and guaranteeing that a jury's deliberations remain secret.

Relying on *Koennecke*, we reaffirmed the importance of protecting the secrecy of jury deliberations in *Cheney*. There, the criminal defendant, convicted of several counts of sexual abuse, moved after trial to interview jurors and for a new trial based upon affidavits of two friends of jurors who reported that the jurors had told them that they knew that the defendant had sexually abused others in the past. The trial court denied both motions and we affirmed. We concluded that

"[t]he content of the allegations of misconduct here are the same as those in *Koennecke*. While in *Koennecke* the juror's coworker suggested that a member of the jury 'had said that this guy has a reputation for doing that sort of thing [*i.e.*, menacing] with a gun,' in this case both affiants asserted that the jury considered evidence that defendant had 'done this before.' Similarly, the form of the allegations in both cases was the same: Here, as in *Koennecke*, the only evidentiary basis for defendant's motion to interview the jurors was hearsay testimony from third parties regarding the substance of the jury's deliberations. No direct statements or testimony from jurors were presented." *Cheney*, 171 Or App 415-16.

Based on the same policy considerations that guided our decision in *Koennecke*, we held that the trial court did not abuse its discretion by denying the defendant's motions to interview jurors and for a new trial.

Plaintiff argues that *Koennecke* and *Cheney* are distinguishable, because the trial court here had significantly stronger evidence of juror misconduct than did the court in either of those cases. Plaintiff emphasizes that the evidence of juror misconduct in those cases consisted only of inadmissable hearsay. Here, plaintiff argues, the court had direct evidence that was not hearsay in the form of the crossed-out statements in the juror notebook.

■ Although the evidence of alleged misconduct here is distinguishable for several reasons from that at issue in *Koennecke* and *Cheney*, that distinction ultimately does not affect our conclusion. First, the purported misconduct here was of the same type—a juror allegedly obtained information not presented at trial—as purportedly occurred in *Koennecke* and *Cheney*.

Second, the trial court properly concluded that the issues on which the juror allegedly conducted outside research were of relatively minor importance. The reference to bone spurs causing no pain would have been relevant only if the jury had found defendant liable and was considering plaintiff's damages. Here, the jury did not reach the issue of damages. The evidence regarding a patient's ability to recall

recovery room conversations, although more relevant, apparently was not a significant trial issue to plaintiff, who presented no countervailing evidence in the face of four defense witnesses. In addition, plaintiff presented no evidence to corroborate either of the asserted instances of misconduct or to show that they had any impact on the jury's ultimate verdict.

Finally, as in *Koennecke* and *Cheney*, our standard of review of the court's rulings is for abuse of discretion. In applying that deferential standard, we are mindful that the trial court is entitled to give great weight to its interest in protecting the secrecy of jury deliberations. *See Cheney*, 171 Or App at 415. Measured against that interest, a civil plaintiff's right to a fair trial can certainly be no greater than the constitutional right of a criminal defendant to a fair trial that was at stake in *Koennecke* and *Cheney*. In light of all the circumstances, we cannot say that the trial court abused its discretion in denying plaintiff's motions to interview the jurors to seek further evidence of misconduct and for a new trial based upon the alleged misconduct.

Affirmed.