Argued and submitted September 29, 1993, affirmed February 2, petition for review denied April 5, 1994 (318 Or 583)

# STATE OF OREGON,
*Respondent,*

*v.*

# GEORGE OLIVER JONES,
*Appellant.*

## (90CR0178; CA A69045)

868 P2d 18

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Ann Kelley argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals his convictions for conspiracy to commit murder and conspiracy to commit aggravated murder. ORS 161.450; ORS 163.095; ORS 163.115. He argues that the trial court erred in denying his motions for a new trial on the basis of juror misconduct[1] and to allow him to interview the jurors about how they reached their verdict. We affirm.

■  The motions were supported by affidavits of defendant's attorney, which said that the attorney had been contacted by two of the jurors who had rendered the verdicts against defendant. One affidavit said, in part:

> "6. [The juror told defendant's attorney] that one or more of the four 'guilty vote' jurors stated that they would not change their minds and unless the 'not-guilty' jurors changed their votes, the jury could stay in the jury room all night; based on that, six of the eight 'not guilty' jurors changed their votes;
>
> "7. [The juror also told defendant's attorney] that one of the jurors who had changed his vote to guilty had called him to explain that he was having a difficult time living with his change of decision, merely so everyone could go home that evening[.]"

A supplemental affidavit said, in part:

> "2. On Thursday, March 14, 1991, an unsolicited telephone call was made to my office by * * * one of the jurors;
>
> "3. During this conversation [the juror] indicated to me that one of the jurors stated that she had a birthday party/dinner to go to with her husband that night, and had indicated at 2:30 p.m., during jury deliberations, that she would be willing to change her vote so that the jury could get out early because she had concerns about attending the birthday party with her husband; [the juror] stated that later on that day, this same juror was visibly upset because she was concerned she would miss the birthday dinner with her husband; it is unknown whether this juror actually changed her vote as a result or not."

---

[1] Although defendant's motion for a new trial initially raised additional grounds, the only issue on appeal is juror misconduct.

The trial court denied both motions. We review the trial court's rulings for an abuse of discretion. *Ertsgaard v. Beard,* 310 Or 486, 800 P2d 759 (1990); *Koennecke v. State of Oregon,* 122 Or App 100, 857 P2d 148, *rev den* 318 Or 26 (1993).

ORCP 64B[2] provides, in part:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"* * * * *

"B(2)   Misconduct of jury or prevailing party."

UTCR 3.120 provides, in part:

"(1)   Except as necessary during trial, and except as provided in subsection (2), parties, witnesses or court employes shall not initiate contact with any juror concerning any case which that juror was sworn to try.

"(2)   After a sufficient showing to the court and on order of the court, a party may have contact with a juror in the presence of the court and opposing parties when:

"* * * * *

"(b)   There is a reasonable ground to believe that a juror or the jury has been guilty of fraud or misconduct sufficient to justify setting aside or modifying the verdict or judgment."

■ ■      There is a strong policy in Oregon to protect jury verdicts from attack. Only limited kinds of juror misconduct justify a new trial. The kind of misconduct that will be considered in an attack on a verdict is misconduct that is extrinsic to the communications between jurors during the deliberative process[3] or that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to contempt of court or criminal prosecution. *See Ertsgaard v. Beard, supra,* 310 Or at 498; *see also*

---

[2] ORS 136.535(4) makes ORCP 64B applicable to a motion for a new trial in a criminal proceeding.

[3] For examples of juror misconduct occurring during communications between jurors while involved in the deliberative process, which were held not to justify a new trial, *see State v. Gardner,* 230 Or 569, 571 n 1, 371 P2d 558 (1962).

*Carson v. Brauer*, 234 Or 333, 345, 382 P2d 79 (1963). Moreover, courts are hesitant to allow interrogation of jurors in order to probe for potential misconduct after they have reached a verdict. The rationale for this policy is the need for freedom of deliberation, stability and finality of verdicts, and protection of jurors from annoyance and embarrassment after they have performed their civic duty and rendered a verdict. *Ertsgaard v. Beard, supra*, 310 Or at 494-97.

■■ Defendant argues that the statement made by one juror that he would not change his vote and that unless the other jurors changed their votes, "the jury could stay in the jury room all night," is not proper deliberation, but is "a refusal to deliberate." We disagree. The statement evidences the intensity of the juror's belief in defendant's guilt. There is no misconduct when jurors emphatically express their opinions concerning a defendant's guilt or innocence. *See State of Oregon v. Imlah*, 204 Or 43, 55, 281 P2d 973 (1955).

Defendant also argues that there was jury misconduct sufficient to warrant a new trial or further examination of the jury in that several jurors voted for a guilty verdict because they wanted to go home, and that several "older jurors" were confused about certain facts and about the law applicable to the case. The jury deliberated seven hours before it returned its verdict. Defendant's allegations concern communications among jurors during the deliberative process. No claim of misconduct is made that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the juror to contempt of court. Moreover, the unofficial commentary to OEC 606 says that the Legislative Assembly "intends to discourage the practice of questioning jurors after a trial *concerning their deliberations or the methods by which they reached a verdict*." Kirkpatrick, *Oregon Evidence* 323 (2d ed 1989). (Emphasis supplied.)

Our system of justice is not a perfect system, because it is administered by imperfect human beings. For the policy reasons articulated above, the law has chosen to shelter jurors from examination about their deliberations absent compelling circumstances that are extrinsic to the deliberation process. Even if this jury abrogated the duty to deliberate because its members wished to go home early, we are not at liberty to invade the sanctity of their deliberations and order a

new trial because of the countervailing policy concerns. Inasmuch as the allegations of defendant's motions did not assert grounds that would justify the setting aside of the verdicts and the ordering of a new trial, the trial court did not err when it denied the motions.

Affirmed.