Argued and submitted May 30, 2019, affirmed March 17, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN THOMAS CHITWOOD,
*Defendant-Appellant.*

Douglas County Circuit Court
15CR48036; A165817

483 P3d 1157

A jury unanimously found defendant guilty of first-degree sexual abuse, second-degree sodomy, and second-degree rape. Defendant appeals, contending that the trial court erred in four ways: (1) by denying defendant's motion *in limine* to introduce evidence of the victim's sexual activity; (2) by failing to, *sua sponte*, grant a mistrial or issue a curative instruction when the prosecutor, in rebuttal, argued that, "if you determined that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt"; (3) by denying defendant's post-trial motion to question jurors after the court received a letter from one juror; and (4) by instructing the jury that it could convict defendant by a nonunanimous verdict. *Held*: The trial court did not err in denying defendant's motion *in limine* and motion to question jurors. The limited record before the court at the time of its pretrial ruling on defendant's motion *in limine* did not compel the conclusion that defendant's need for the evidence outweighed the state's interest in excluding it. On the motion to question jurors, the court was within its discretion in concluding that the information supplied by the juror's letter did not amount to fraud or misconduct such that the court was required to grant the motion. The Oregon Court of Appeals declined to exercise its discretion to correct the alleged plain errors relating to the prosecutor's closing argument, and the trial court's nonunanimous jury instruction error was harmless.

Affirmed.

Frances Elaine Burge, Judge.

Lindsey Burrows argued the cause and filed the briefs for appellant. Also on the opening brief was O'Connor Weber LLC.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Affirmed.

James, J., dissenting.

**LAGESEN, P. J.**

The state charged defendant with 19 sex offenses against a 13-year-old victim and one count of unlawful delivery of marijuana to the same minor. A jury unanimously found defendant guilty on three charges—one count of first-degree sexual abuse, one count of second-degree sodomy, and one count of second-degree rape—and acquitted him on the remainder. The trial court merged the guilty verdicts on the sexual abuse and sodomy charges and entered a judgment of conviction for one count of second-degree sodomy and one count of second-degree rape. Defendant appeals, contending that the trial court erred in four ways: (1) by denying defendant's motion *in limine* to introduce evidence of the victim's sexual activity; (2) by failing to, *sua sponte*, grant a mistrial or issue a curative instruction when the prosecutor, in rebuttal, argued that "if you determined that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt"; (3) by denying defendant's post-trial motion to question jurors after the court received a letter from one juror; and (4) by instructing the jury that it could convict defendant by a nonunanimous verdict. We affirm.

*Motion in limine*. The charges against defendant stemmed from his conduct involving his 13-year-old stepdaughter, B. Before trial, defendant moved *in limine* under OEC 412 for a ruling allowing him to introduce evidence that, during her CARES interview, the victim "admit[ted] to not being a virgin, outside of the allegations that are made in this case." Defendant argued that the evidence about the victim not being a virgin was constitutionally required to be admitted to counteract the possibility that the jury might infer that, because of her age, the only possible source of her sexual knowledge was the alleged crimes committed by defendant. The prosecutor argued in response that she did not intend to argue that it was inferable that the only place the victim could have obtained sexual knowledge was from defendant. She also noted that the victim's knowledge was not relevant to any element that the state had to prove. After hearing the parties' arguments, the trial court denied the motion, ruling that "based on what I have before me, I do not find that the defense has, has met its burden to allow

that information to come in. And that's, again, based on what evidence I have." Defendant did not seek to introduce the evidence at trial after the victim testified, or otherwise renew the motion to admit the evidence.

On appeal, defendant assigns error to the court's denial of his pretrial motion. He argues, as he did below, that the evidence was constitutionally required to be admitted under OEC 412(2)(b)(C). The state responds that, especially considering the limited record before it at the time it ruled on defendant's motion, the court did not err.

Our review of the trial court's ruling is for legal error. *State v. Fowler*, 225 Or App 187, 193, 200 P3d 591, *rev den*, 346 Or 257 (2009) (reviewing for legal error trial court's determination regarding admissibility of evidence under OEC 412(2)(b)(C)). OEC 412 generally bars the introduction of evidence of a crime victim's past sexual behavior in the prosecution of a sex offense unless the evidence falls within one of the rule's exceptions. OEC 412(2); *Fowler*, 225 Or App at 192-94. Here, defendant contends that the applicable exception is OEC 412(2)(b)(C), which allows for the admission of a victim's past sexual behavior when "otherwise constitutionally required to be admitted." Defendant argues that the evidence was constitutionally required to be admitted in furtherance of his right to present a defense.

"In determining whether evidence must be admitted because excluding it would infringe on a defendant's constitutional rights to confront witnesses and present exculpatory evidence, the constitutional issue reduces to a weighing of the state's interest in excluding the defendant's evidence against the value of that evidence to the defense." *Fowler*, 225 Or App at 193-94 (brackets and internal quotation marks omitted). As we have explained, "Under OEC 412, the state's interest is in protecting victims of sexual crimes from degrading and embarrassing disclosure of intimate details about their personal lives, thereby encouraging victims to report and assist in the prosecution of the crime." *Id.* at 194 (brackets and internal quotation marks omitted).

In this case, defendant's claimed need for introducing the evidence was to rebut the inference that the only way the victim could have obtained her sexual knowledge

was through the alleged conduct involving defendant. But the limited record before the court at the time of its pretrial ruling does not compel the conclusion that defendant's need for the evidence outweighed the state's interest in excluding it. As the state points out, the victim was 13 years old, an age at which it would not be unreasonable to think that she had acquired some degree of knowledge about sex through exposure to the world. Further, on the record before the trial court at the time of its ruling, there was little reason to think that cross-examination could not be used to demonstrate that the victim had sexual knowledge acquired from sources other than defendant. *See State v. Weeks*, 99 Or App 287, 291 n 2, 782 P2d 430 (1989), *rev den*, 309 Or 334 (1990) (noting the role cross-examination can play in demonstrating a victim's sexual knowledge). Finally, the prosecutor represented that she would not be arguing that the jury should infer that defendant committed the crimes based on the notion that the victim would not otherwise have knowledge about the conduct that she was describing. Under those circumstances, the court was correct to conclude that defendant had not demonstrated pretrial that the evidence was constitutionally required to be admitted.

*Closing argument.* In his second assignment of error, defendant argues that the trial court erred when it did not grant a mistrial or issue a curative instruction when the prosecutor made the following argument to the jury during closing argument rebuttal:

"[PROSECUTOR:]   The things that I want to cover with you is do you remember Mr. Strong, our juror that said he was falsely accused and he described to you that his false accuser was washed out at the forensic interview stage? I don't know if you all remember that but he claimed he had been falsely accused of a sex crime and she washed out because it was false. And this is not false.

"I want to talk to you about moral certainty because that's the threshold. Deep down in your core is your moral core and that's where you're deciding this case from. Moral certainty. And if, after considering all of the evidence, and again, I encourage you to listen and look at everything that you see here today. Based on the evidence presented to you, without bias or sympathy for anyone, if you determine that

[defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt. Thank you."

Defendant did not object to the prosecutor's closing argument. He argues, however, that the trial court, on its own, (1) should have recognized that the prosecutor's reference to the jury impermissibly relied on evidence outside the record when talking about the prospective juror, (2) should have recognized that the prosecutor's description of what it meant to have moral certainty inaccurately characterized the burden of proof, and (3) should have issued either a curative instruction or granted a mistrial.

Had defendant made his objections to the trial court, it would have been incumbent on the court to, at a minimum, issue a curative instruction. It is not permissible to base closing argument on extra-record evidence. *State v. Spieler*, 269 Or App 623, 641, 346 P3d 549 (2015). And the prosecutor's assertion that she had proved her case beyond a reasonable doubt if the jury felt that defendant should not live with an adolescent girl is not an accurate statement of the law and risked misleading the jury into thinking it could convict based on its comfort level with defendant living with an adolescent girl. That appeal was, in effect, an impermissible plea to the jury to decide the case based on how the evidence made it feel about defendant, instead of deciding it based on a determination that it was persuaded by the evidence that defendant had committed the charged crimes. *See State v. Lundbom*, 96 Or App 458, 461, 773 P2d 11, *rev den*, 308 Or 382 (1989) (improper for prosecutor to make arguments "calculated to elicit an emotional response from the jury"). But defendant did not object so we are in a plain error posture, which means that we would have to be persuaded to exercise our discretion to correct the alleged error, were we to conclude that it was plain.

We are not persuaded to do so here. As an initial matter, the record does not compel the conclusion that defendant was denied a fair trial because of the prosecutor's remark. *See State v. Montez*, 324 Or 343, 357, 927 P2d 64 (1996), *cert den*, 520 US 1233 (1997) ("[T]he trial court's failure to grant a mistrial *sua sponte* constitutes reversible

error only if it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial."). And where it is possible that a party failed to raise an objection for strategic reasons, that weighs against correcting any alleged error on plain error review. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007) (noting that "the possibility that [the] defendant made a strategic choice not to object" weighs against correcting plain error).

Here, there is a possibility that defendant made a strategic choice not to request a mistrial. The prosecutor's remarks occurred in rebuttal, at the very end of trial, a point at which defendant may well have had a sense of how the trial was going and may have wanted it to go forward to the jury, rather than end in a mistrial.

As for a curative instruction, there is a possibility that defendant made a strategic choice not to request one so as not to highlight the prosecutor's argument with an instruction addressing it right before the case went to the jury. *See, e.g.*, *State v. Ramirez-Estrada*, 260 Or App 312, 324, 317 P3d 322 (2013), *rev den*, 355 Or 317 (2014) (declining to reverse based on alleged plain error on not giving a curative instruction where it was plausible the defendant did not want one). In any event, the error in failing to give a curative instruction is one that easily could have been avoided if defendant had brought the need for one to the court's attention, and to exercise our discretion to correct the error in this circumstance would undermine the purposes of preservation by allowing for potential tactical sandbagging by declining to raise the issue so that defendant could take the case to jury, obtain the benefit of any acquittals (in this case, 17), and then present the issue on appeal to obtain the reversal of any convictions (in this case, given merger, two). *See State v. Inman*, 275 Or App 920, 935, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) ("[T]he ease with which any error could have been avoided or corrected should be a significant factor in an appellate court's decision whether to exercise its discretion to correct a plain, but unpreserved, error."). For those reasons, we decline to exercise our discretion to correct the alleged errors of declining to issue a curative instruction or grant a mistrial to the extent they might otherwise qualify as plain errors.

The dissenting opinion reaches a contrary conclusion. In so doing, it addresses important considerations about the need for jury concurrence and the potential risks and effects of overcharging on jury deliberations. Those considerations are ones that, in the context of a preserved claim of error—that is, in a case in which a defendant had objected and the trial court declined to take action—would point toward the conclusion that the error was not a harmless one. But in this unpreserved setting and in view of the Supreme Court's guidance on how to address unpreserved claims of error, those considerations do not counsel in favor of exercising our discretion to correct the unpreserved claims of error here.

*Jury questioning.* In his third assignment of error, defendant challenges the trial court's denial of his motion to question jurors under UTCR 3.120(2). That motion was based on a post-trial letter to the court from one of the jurors and information that defense counsel had obtained from a third-party about another juror. In the letter to the court, the juror expressed concern that the jury had been tired, and that defendant might have been "unfairly convicted by a tired jury whose decisions may have been based more on feelings than evidence." The juror stated that she thought not every count had received the full attention of the jury and that some of the counts did not have the necessary number of votes (at that time, 10). (Notwithstanding the juror's expressed concerns about whether the verdicts were supported with the requisite number of votes, we note that the record contains the written jury poll. On each count, each juror signed on a line indicating that juror's vote. That written poll demonstrates that each verdict had the correct number of votes and that all three verdicts of guilt were unanimous.) She also stated that she "did not feel that we followed the mathematical instructions you gave us to arrive at our verdict." The information obtained from a third-party was the opinion of a different juror that another juror (not the letter writer), who was married to defendant's cousin, "wanted to hang Defendant right off the bat." (As defendant acknowledges, however, the juror disclosed the relationship in *voir dire* but affirmed that she could be fair and impartial.) Defendant argued that that information supplied a basis for questioning jurors. The trial court denied the motion.

Our review is for abuse of discretion, *State v. Wright*, 323 Or 8, 20, 913 P2d 321 (1996), and the trial court did not abuse its discretion. UTCR 3.120(2)(b) allows for a party to have contact with a juror if "[t]here is a reasonable ground to believe that a juror or the jury has been guilty of fraud or misconduct sufficient to justify setting aside or modifying the verdict or judgment." But, as we have explained, "[t]here is a strong policy in Oregon to protect jury verdicts from attack, and courts are hesitant to interrogate jurors after they have reached a verdict in order to probe for potential misconduct." *Koennecke v. State of Oregon*, 122 Or App 100, 103, 857 P2d 148, *rev den*, 318 Or 26 (1993). Thus, "The kind of misconduct that will be considered in an attack on the verdict is misconduct that is extrinsic to the communications between jurors during the deliberative process or that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to contempt of court or criminal prosecution." *State v. Jones*, 126 Or App 224, 227, 868 P2d 18, *rev den*, 318 Or 583 (1994) (footnote omitted).

Here, the trial court was within its discretion to conclude that the information on which defendant based his motion did not demonstrate misconduct of that ilk. Rather, the information supplied was more indicative of the ordinary challenges and imperfections that inhere in the deliberative process of a jury—tiredness, disagreements, strong opinions, and concerns that the jury as a whole did not reach the correct decision. Although they are reminders of some of the weaknesses of our jury system, they are the types of things that do not rise to the level of fraud or misconduct, so as to have required the grant of defendant's motion for jury questioning in the face of Oregon's strong policy against such questioning. *See, e.g.*, *Jones*, 126 Or App at 226 (juror's expression of intense beliefs about guilt not misconduct).

*Instructions regarding nonunanimous verdicts.* In a supplemental brief, defendant assigns error to the court's instruction that only 10 jurors needed to find defendant guilty to convict him, although he acknowledges that the jury's verdict on each count was unanimous. That claim of error is foreclosed by *State v. Flores Ramos*, 367 Or 292, 294, 334, 478 P3d 515 (2020) (holding that error in instructing

the jury that it could return nonunanimous guilty verdicts did not require reversal of convictions rendered by unanimous guilty verdicts), and *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020) (same).

Affirmed.

**JAMES, J.,** dissenting.

I join my colleagues in rejecting defendant's first assignment of error challenging the denial of his motion *in limine*. However, I reach a different conclusion than the majority on defendant's second assignment of error.[1] In this case, the court instructed the jury on reasonable doubt using the optional language of Uniform Criminal Jury Instruction (UCrJI) 1009 speaking to "moral certainty." Specifically, the court instructed the jury prior to closing:

> "You must return a verdict of not guilty if, after careful and impartial consideration of all the evidence in the case, you are not convinced to a moral certainty that the defendant is guilty."

UCrJI 1009 gives no definition to moral certainty.[2] But in rebuttal closing, the prosecutor sought to define "moral certainty" for the jurors as follows:

> "[I]f you determine that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt."

Defendant did not object, and the court took no action in response to the prosecutor's statement.

---

[1] Accordingly, I need not reach the third and fourth assignments of error.

[2] There is no statutory requirement that UCrJI 1009 include the option for "moral certainty." As the Oregon Supreme Court has held, "[i]ncluding the term 'moral certainty' in an instruction defining reasonable doubt is not necessarily error, *** [but] is not particularly helpful to the jury." *State v. Williams*, 313 Or 19, 37, 828 P2d 1006 (1992). The criticisms of "moral certainty" as an instruction to define reasonable doubt are legion. *See, e.g.*, *United States v. Thompson*, 11 F2d 875, 876 (W D Wash 1926) (Moral certainty is a phrase that "involves a contradiction approaching absurdity; for 'certainty' imports a truth of fact and proven beyond any doubt or question, while 'moral' imports the like proven to only probability. That is to say, taken literally and not in judicial forced construction to sanction its use, the term imports a truth of fact probably proven beyond any doubt or question."); *People v. Brigham*, 25 Cal 3d 283, 304, 599 P2d 100 (1979) (explaining at length the problems with moral certainty); Barbara J. Shapiro, *To A Moral Certainty: Theories of Knowledge and Anglo-American Juries 1600-1850*, 38 Hastings L J 153 (1986) (discussing history of the term).

On appeal, defendant's second assignment of error challenges the prosecutor's erroneous definition of moral certainty, arguing that the trial court was obligated, *sua sponte*, to give a curative instruction in response. The majority concludes that the prosecutor's statements were improper, and that a curative instruction would have been required, if requested. I agree.

As I understand the majority opinion, it appears to view the error here as qualifying as plain error under the first prong of *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), but declines to exercise discretion to correct the error. The majority's decision to not reverse a conviction based upon unobjected to prosecutorial misconduct in closing argument is not unusual; quite the opposite. I can find not a single occurrence of Oregon appellate courts ever exercising discretion to correct prosecutorial misconduct in closing when the matter is raised as one of plain error. And yet, simply because something always has been, does not mean it has always been right. For the following reasons, I would exercise discretion to correct the error here, and respectfully dissent.

As I have previously explained in the context of our harmless error analysis, we have employed a "flawed jurisprudential approach to assessing \*\*\* prosecutorial misconduct in closing." *State v. Camirand*, 303 Or App 1, 15, 463 P3d 46 (2020) (James, J., dissenting). The concerns I expressed in *Camirand* are present in this case. But the prosecutorial misconduct in this case occurs against a contextual backdrop not present in *Camirand*: prosecutorial overcharging. Overcharging is the prosecutorial decision to either (1) charge a higher severity of offense than the facts warrant, or to (2) charge a greater number of counts than the facts can support.[3] Overcharging is not simply charging a defendant with a multitude of crimes. There is nothing improper about the state's choice to subject a defendant to the full penalty of the law for each unlawful act committed. It is when the choice in severity of charge, or the number

---

[3] Some states have prohibited overcharging by statute. *See, e.g.*, RCW 9.94A.411(2)(a) ("(ii) The prosecutor should not overcharge to obtain a guilty plea. Overcharging includes: (A) Charging a higher degree; (B) Charging additional counts."). Oregon has no such statutory prohibition.

of charges, is disconnected from the specific instances of conduct justifying each charge that overcharging occurs. In this respect, overcharging bears a relationship to jury concurrence.

The practice of overcharging a defendant is a widely recognized abuse of the prosecutor's generally unreviewable discretion. It is an act that, while not uncommon, and often acknowledged as troubling, rarely goes addressed by courts. At best, opinions express toothless concern. *See, e.g.*, *Bordenkircher v. Hayes*, 434 US 357, 368 n 2, 98 S Ct 663, 54 L Ed 2d 604 (1978) (Blackmun, J., dissenting); *United States v. Andrews*, 612 F2d 235, 241 n 7, 256 n 23 (6th Cir 1979), *reh'g en banc*, 633 F2d 449 (1980), *cert den*, 450 US 927 (1981) (Keith, J., dissenting). As a result, "overcharging * * * continue[s] to occur regularly, without meaningful judicial review or correction." Bennett L. Gershman, *The New Prosecutors*, 53 U Pitt L Rev 393, 408 (1992).

The risks of overcharging are two-fold. The first risk—and the one that is most often discussed—involves plea bargaining. As the Ninth Circuit noted in *United States v. Robertson*:

> "Plea bargaining is now the mainstay of our criminal law system, and excessive charges give the prosecutor added leverage in the plea bargaining process. Because of the threat of prosecution on such charges, defendants may be induced to plead guilty on more unfavorable terms than might otherwise be fair or reasonable. The risk of going to trial may simply become too great, even in cases in which the defendant may arguably be innocent of some of the charges."

15 F3d 862, 876-77 (9th Cir 1994), *rev'd*, 514 US 669, 115 S Ct 1732 (1995), *reinstated in part*, 73 F3d 249 (9th Cir 1996) (Reinhardt, J., concurring). Overcharging so dramatically tilts the risk of going to trial that a defendant, even an innocent defendant, can make the entirely rational choice to plead guilty and accept a known lesser sentence, rather than run the risk of proclaiming their innocence.

But there is a second risk from overcharging, and it is the one implicated in this case. "[B]eyond the plea bargaining stage, overcharging may facilitate a compromise verdict

in which the jury channels its doubt as to the defendant's guilt into acquitting him on some charges but not others." *Id*. In essence, when the jury is faced with a great volume of charges, the natural and understandable human reaction is to think that the defendant must have done *something*. When the government accuses a defendant of 10, 20, or more crimes, surely, thinks the jury, some of these must be true. The risk that a jury may base its verdict, not upon proof of a specific act justifying a specific charge, but upon the belief that *some* criminal activity occurred in *some* manner, is at its zenith when the charges at issue are numerous or largely duplicative, and undifferentiated by date, time, or occurrence. That is the situation here.

    The state charged the defendant with 19 sexual offenses: 3 counts of sexual abuse in the first degree, ORS 163.427 (Counts 1 to 3), 5 counts of sodomy in the second degree, ORS 163.395 (Counts 4 to 8), 1 count of unlawful sexual penetration in the second degree, ORS 163.408 (Count 9), and 10 counts of rape in the second degree, ORS 163.365 (Counts 10 to 19). Each of those 19 counts in the state's indictment begins identically: "[t]he defendant, on or between August 2, 2014, and August 2, 2015, in Douglas County, Oregon, did unlawfully and knowingly ***."

    The state's theory at trial was that defendant repeatedly sexually abused the victim, his stepdaughter. The victim's testimony described a host of terrible, repeated, ongoing abuse over time. There was ample evidence in the record, in theory, to justify many of the charges against defendant. But the state made little effort to explain to the jury precisely what acts formed the basis of which charge. Defense counsel, bafflingly, did not make a motion for election, which would have triggered the trial court's obligation to "choose a means to ensure the jury limits its consideration to the elected factual occurrence." *State v. Payne*, 298 Or App 411, 422, 447 P3d 515 (2019). Nor did the trial court, on its own initiative, employ one of the "three primary tools at its disposal to ensure a jury bases its verdict on a discrete factual situation: a jury instruction, a statement of issues, or a verdict form." *Id*. Finally, even though we have held that "[b]ecause an *Ashkins* [*State v. Ashkins*, 357 Or 642, 649, 357 P3d 490 (2015)] election exists to ensure jury concurrence,

mere argument by the parties is insufficient to ensure that the jury only relied on certain evidence in reaching its verdict," not even that poor substitute for a concurrence instruction was present here. *Id*.

In closing argument, the state called out a few instances of conduct, but nothing equaling all 19 counts:

> "[PROSECUTOR]:   On the couch, he grabbed her phone, he put [her] mouth on [his] penis, that's Sodomy 2.
>
> "* * * * *
>
> "[PROSECUTOR]:   Licking, his, his mouth on her vagina after sexual intercourse, she told that on the pretext call. You, you licked my vagina after you had sex with me. That's Sodomy 2."

No other actions were identified as corresponding to sodomy, and the jury was left to decide for themselves which counts of sodomy, 4 through 8, reflected which factual allegation.

With respect to the sex abuse counts, the prosecutor again called out some acts, but not enough to tie to each count:

> "[PROSECUTOR]:   The mouth on her breasts in front of Cody, that's Sex Abuse. That's touching her breasts for a sexual purpose, Sex Abuse 1."

Counts 1, 2, or 3, were unspecified.

And again, as to the rape charges:

> "[PROSECUTOR]:   The sexual intercourse in the bathroom, she discussed that on the pretext call, that's Rape 2.
>
> "* * * * *
>
> "[PROSECUTOR]:   She discussed having sex on his bed with him, that's Rape 2."

The indictment charged 10 counts of rape.

Ultimately, the prosecutor abandoned all attempts to make an election by tying the specific counts to specific acts when she told the jury to do that job for themselves:

> "If you determine she is credible when she says that he placed his penis in her mouth or anus, or placed his

mouth on her vagina, or licked her vagina, that is Sodomy in the Second Degree. "If you can differentiate five different times, find him guilty of Counts 4, 5, 6 and 7. * * * You need to differentiate them. If you decide there is only two or three that you can differentiate, find him guilty of only two or three.

"If you determine that [defendant] had sexual intercourse with [victim], that is Rape in the Second Degree. If you find it occurred ten times as [she] told you, find him guilty of Counts 10 through 19. If you can only differentiate five or six or seven, find him guilty of the ones that you can differentiate."

The manner in which this case was tried—the number of charges, the lack of an election, the lack of a concurrence instruction, and the failure at closing to tie specific counts to specific acts—created a powder keg. The prosecutor's definition of moral certainty was the match. Faced with 19 sexual crimes spanning a year-long date range and untethered to specific instances of conduct corresponding to each count, the prosecutor sought to define "moral certainty" for the jury as whether defendant "should not reside with an adolescent girl." Such a definition invites the jury to decide the matter, not upon the evidence supporting the specific factual allegations, but upon propensity. Propensity based arguments are no less injurious to the "fairness of trials and the accuracy of verdicts" than propensity evidence. *State v. Skillicorn*, 367 Or 464, 477, 479 P3d 254 (2021).

Ultimately, the jury convicted defendant on three counts—Count 1, Count 4, and Count 11—the first count in each of their respective categories. Why those counts and not the others? What acts did the jury believe occurred, and which did it reject? On what acts, exactly, did the jury convict and acquit? We simply have no idea. Nothing in this record indicates that anyone ever involved in this case—not the prosecutor, the defense counsel, the trial court, nor the jury—understood what the jury decided at the end of the trial.[4] This was fully evident when, ultimately, at sentencing

---

[4] Of note, a juror mailed the trial court a letter after the verdict, which the court accepted and made part of the record. In that letter, the juror states:

"Initially, things were said like 'my gut tells me he's guilty,' but it was pointed out that we were to make our determination on the evidence, rather than our

the parties faced the issue of whether the sentences should run consecutively. The prosecutor noted to the court:

> "[PROSECUTOR]:   I can't ask you to make that same finding because I don't know which incident the jury decided was the Sex Abuse in the First Degree. So based on the law, I believe that the Sex Abuse in the First Degree must be concurrent with one of the others * * *."

The court inquired further of the prosecutor on that point:

> "THE COURT:   I recall, for the closing, that you had to make election, basically, and can you remind me what your election was?
>
> "[PROSECUTOR]:   Your Honor, I don't, I don't, I don't recall that I made a particular election. I, I believe I told them they had to, there were many incidents that were testified to but they had to, in their minds and their deliberations, describe the incident that they were gonna vote on and then vote on it. I don't recall that I told them which ones * * *."

This case did not conform to how criminal trials are expected to be conducted in Oregon, particularly serious felony trials. I cannot join the majority in concluding that defense counsel's failure to object might evidence "a strategic choice" not to request a curative instruction or a mistrial. 310 Or App at 28. I see no evidence of a strategic choice, just oversight. Similarly, I cannot conclude that defendant may not have wanted to "highlight the prosecutor's argument with an instruction addressing it right before the case went to the jury." *Id*. In the context of this trial—primed for a compromise verdict—there could be little more damaging to a defendant than allowing the jury to evaluate reasonable doubt in terms of whether he "should not reside with an adolescent girl." I would, therefore, take the admittedly unprecedented step to exercise discretion to correct the error.

I respectfully dissent.

---

feelings, and several began to believe that the evidence was simply lacking. * * * Not every count received individual attention, and the ones which did, did not have the required 10 of 12 votes."