144 April 29, 2026 No. 347

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD WAYNE ROSE, JR.,
*Defendant-Appellant.*

Polk County Circuit Court
22CR11277; A183169

Rafael A. Caso, Judge.

Submitted June 17, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for seven counts of first-degree sexual abuse, ORS 163.427 (Counts 1 to 7), one count of luring a minor, ORS 167.057 (Count 8), and one count of private indecency, ORS 163.467 (Count 9). The charges against defendant arose out of his granddaughter E's allegations that defendant sexually abused her for the four years during which she lived in his house, beginning when she was six years old. E disclosed the abuse to her mother two years after they moved out of defendant's home. Following a trial, the jury found defendant guilty as charged. On appeal, defendant raises four assignments of error. For the reasons explained below, we affirm.

In defendant's first assignment of error, he argues that the trial court plainly erred in admitting expert testimony explaining the general reasons for delayed disclosure of child sexual abuse because it was unduly prejudicial and improper vouching evidence. The Supreme Court rejected those arguments in *State v. Akins*, 373 Or 476, 488-89, 568 P3d 174 (2025) (explaining that, even where a defendant does not challenge the victim's credibility based on the delay, such testimony is not categorically unfairly prejudicial under OEC 403 nor categorically inadmissible vouching evidence). Even if the expert testimony here differs from the testimony in *Akins*, because here the witness explained more of the general reasons behind delayed disclosure and not just that the phenomenon is common, we nevertheless conclude that any error is not plain. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (to establish plain error, a defendant must demonstrate, among other things, that the error was "obvious"). We therefore reject defendant's first assignment of error.

Defendant's second and third assignments of error challenge the trial court's failure to grant a new trial or mistrial based on juror misconduct. Several days after defendant's trial, Juror 218 left a voicemail for defense counsel expressing concerns about "the way the verdict came about." At a hearing on the issue, Juror 218 confirmed that the trial court had accurately read the verdict form, that the

jurors were not presented with evidence that had not been received in court, and that no juror was threatened with physical force. Juror 218 stated that although there was "no vindictiveness or animosity," she felt pressured because the other jurors wanted to "get this over with." As a result, she felt "manipulated into *** saying, yes, that [defendant] was guilty." The trial court concluded that Juror 218 had "buyer's remorse" but did "not believe that we have a coerced verdict, and so the verdict will stand."

We begin with the motion for mistrial. Even if defendant's motion can be construed as a motion for mistrial, we conclude that the trial court did not err in rejecting it because it was made after the jury had returned its verdict and been discharged. *State v. Vogh*, 179 Or App 585, 591, 41 P3d 421 (2002) (explaining that a "motion for mistrial at that late stage is untimely" and that "the only post-verdict motions authorized by statute in criminal cases are a motion for a new trial and a motion in arrest of judgment").

We turn next to whether the trial court erred in denying defendant's motion for a new trial, reviewing that decision for an abuse of discretion. *State v. Miller*, 167 Or App 72, 75, 1 P3d 1047, *rev den*, 330 Or 553 (2000).

A trial court may set a judgment aside and grant a new trial due to "[m]isconduct of the jury" that "materially affect[ed] the substantial rights" of the aggrieved party. ORCP 64 B(2); ORS 136.535(1) (providing that ORCP 64 B applies to and regulates new trials in criminal actions). The jury's verdict may not be set aside unless the misconduct "constitutes a serious violation of the juror's duty and deprives complainant of a fair trial." *State v. Gardner*, 230 Or 569, 575, 371 P2d 558 (1962). We have explained:

> "There is a strong policy in Oregon to protect jury verdicts from attack. Only limited kinds of juror misconduct justify a new trial. The kind of misconduct that will be considered in an attack on a verdict is misconduct that is extrinsic to the communications between jurors during the deliberative process or that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to contempt of court or criminal prosecution."

*State v. Jones*, 126 Or App 224, 227, 868 P2d 18, *rev den*, 318 Or 583 (1994) (footnote omitted). There, we observed that even if "several jurors voted for a guilty verdict because they wanted to go home, * * * the law has chosen to shelter jurors from examination about their deliberations absent compelling circumstances that are extrinsic to the deliberation process." *Id.* at 228-29; *State v. Woodman*, 341 Or 105, 113, 138 P3d 1 (2006) (post-verdict juror affidavits and testimony are not admissible to establish the mental processes jurors used in reaching verdict). Following the reasoning of those cases, we conclude that Juror 218's alleged misconduct, where she decided to vote guilty because she felt pressure as a holdout, related to the jury's deliberative process and was not the type of misconduct sufficient to warrant a new trial. *See Jones*, 126 Or App at 228-229 ("Even if th[e] jury abrogated the duty to deliberate because its members wished to go home early, we are not at liberty to invade the sanctity of their deliberations and order a new trial.").

Defendant's fourth assignment of error contends that the trial court erred when it prohibited defendant from discussing the state's plea offer at sentencing. We conclude that, in this case, any error in the trial court disallowing defendant from discussing plea negotiations at sentencing was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless if there is "little likelihood that the particular error affected the verdict"). At sentencing, the state recommended a sentence of 525 months, and defendant argued for 150 months. The trial court then imposed sentence, explaining that it "is this Court's intent to run those first four counts consecutive, one for each year that [E] was required to live in [defendant's] house." The court ran the other counts concurrently, for a total sentence of 300 months of incarceration. The court further explained that in imposing sentence, it considered defendant's age, that he suffers from post-traumatic stress disorder, his lack of prior criminal history, and the proportionality of the conduct he exposed E to over four years. Ultimately, the court concluded that "this is a proportional sentence based on the conduct charged and the conduct convicted of by the jury." The record demonstrates that the court understood it was bound by the jury's credibility determination and imposed

a sentence that it believed was proportionate to the conduct for which defendant had been found guilty, after considering the factors raised by both parties. In that context, even if the court erred in prohibiting defendant from discussing plea negotiations, we are persuaded that any error had little likelihood of affecting the court's sentencing decision.

Affirmed.